STATE ex rel. LEASE, Appellant, *v.* WILKINSON, Mayor, et al., Respondents.

(No. 4,460.)

(Submitted March 8, 1921.   Decided March 19, 1921.)

[196 Pac. 878.]

*Cities and Towns—Metropolitan Police Law—Illegal Removal of Officer—Reinstatement—Mandamus—Pleading and Practice—Demurrer—City Council—Jurisdiction.*

Pleading and Practice—Demurrer to Portion of Pleading not Permissible.

1. A demurrer cannot be interposed to a portion of a pleading only.

Metropolitan Police Law—*Mandamus*—Defenses—Motion to Strike.

2. Where in a proceeding in *mandamus* to compel the reinstatement of a police officer alleged to have been illegally removed from his office the defendant's pleading did not constitute a defense or disclose any reason why the writ should not be issued, a motion to strike should have been sustained.

Same—Police Officers—Removal or Suspension—Procedure.

3. A police officer may be suspended or discharged for neglect of duty or disobedience of orders by the chief of police under Chapter 57, section 25, subdivision C, Laws of 1911, subject to review by the superintendent of the police department, from whose order of approval the accused may appeal to the city council; or by the council under Revised Codes, sections 3308, 3309, upon charges filed with it, a copy of which must be furnished to him, after a trial had on at least two days' notice.

---

2. *Mandamus* as remedy to restore party to office, see notes in 12 Ann. Cas. 14; Ann. Cas. 1912A, 152.

Same—City Council—Jurisdiction.

    4. In proceedings looking to the removal of a police officer under the provisions of the metropolitan police law, the city council acts as a special tribunal with *quasi*-judicial authority, and its jurisdiction depends upon a substantial compliance with the statute.

Same—Removal of Officer—Appeal.

    5. Where an acting chief of police merely recommended to the council that a police officer be removed from office, but did not actually suspend or discharge him, in conformity with subdivision C of section 25, Chapter 57, there was no order from which he could appeal, and his attempted appeal was ineffectual for any purpose.

Same—Illegal Removal—Reinstatement.

    6. Where a city council itself preferred charges against a police officer, conducted a trial *ex parte*, determined the guilt of the accused, discharged him from office, and then for the first time gave him notice that charges had been preferred and that he was dismissed, in disregard of the course prescribed by the statutes above, its action was illegal, and the officer was entitled to reinstatement.

*Appeal from District Court, Missoula County; Theodore Lentz, Judge.*

APPLICATION by the State of Montana, on relation of Harley H. Lease, for a writ of *mandamus,* against H. T. Wilkinson, Mayor of the City of Missoula, and others. Judgment of dismissal, and relator appeals. Reversed and remanded, with directions to issue peremptory writ.

*Messrs. Madeen & Russell,* for Appellant, submitted a brief; *Mr. Chas. A. Russell* argued the cause orally.

That court erred in overruling demurrer, and motion to strike is hardly open to controversy in view of following authorities and others cited. In cities governed under the commission form law, the council is the only tribunal or authority with power to hear and determine complaints or charges having for their purpose the removal of a police officer, and before such officer can be lawfully removed, he must have had his trial, and have been found guilty of the charges by the city council. (*State ex rel. O'Brien* v. *Mayor of Butte,* 54 Mont. 533, 172 Pac. 134; *People* v. *Waldo, Fire Commr.,* 151 App. Div. 709, 136 N. Y. Supp. 191; *Reising* v. *City of Portland,* 57

---

    4. Validity of statutes creating metropolitan police, see notes in 8 Ann. Cas. 1102; Ann. Cas. 1917D, 1112.

Or. 295, Ann. Cas. 1912D, 895, 111 Pac. 377; *State v. Fassett,* 69 Wash. 555, 125 Pac. 963; *Dinan v. Superior Court,* 6 Cal. App. 217, 91 Pac. 806; *Craig v. Superior Court,* 157 Cal. 481, 108 Pac. 310; *Greenbaum v. Bingham,* 201 N. Y. 343, 94 N. E. 853; *State (Reilly) v. Mayor,* 64 N. J. L. 508, 45 Atl. 778.)

It is not the province of the city council to arbitrarily and unlawfully remove an officer without charges, notice or hearing, and when *mandamus* is brought to compel reinstatement, then bring forward fancied or real grounds for removal as a defense and to first try the same in the *mandamus* proceeding in district court. The only issues in this class of cases that may be tried in the *mandamus* proceeding is the regularity and validity of the action of city council upon the record and proceedings had before the council in the proceeding removing such officer.

The court will review the case not to determine the guilt or innocence of the accused, but simply to determine if the council or trial board had performed its statutory duty. (*Bailey v. Examining and Trial Board,* 42 Mont. 216, 112 Pac. 69; *Herbert v. Atlantic City,* 87 N. J. L. 98, 93 Atl. 80; *Clancy v. Board of Fire and Police Commrs.,* 150 Wis. 630, 138 N. W. 109; *Farish v. Young,* 18 Ariz. 298, 158 Pac. 845; *State v. Williams,* 123 Wis. 61, 100 N. W. 1048; *Tucker v. City of Boston,* 223 Mass. 478, 112 N. E. 90; *People v. Waldo, Fire Commr., supra.*

*Mr. John L. Campbell,* for Respondents, submitted a brief; *Mr. Dwight N. Mason,* of Counsel, argued the cause orally.

Relator had an adequate remedy at law. (Sec. 3308, Rev. Codes; *Bailey v. Examining & Trial Board,* 42 Mont. 216, 112 Pac. 69.)

The circumstances of the case are not such as will call forth the action of the court. In this connection it is proper to consider the question of discretion which a court should exercise in issuing a writ of *mandamus.* We believe the rule to be that this discretion will not be exercised in favor of an ap-

plicant unless some just purpose may be answered by the writ; and that it would be wholly improper for the court to lend its aid to the effectuation of a palpable injustice, or to grant the writ when relator does not come with clean hands. Likewise, the courts will not grant the writ when its issuance, if granted, would be unavailing, nugatory or useless. (*State ex rel. Donovan* v. *Barrett*, 30 Mont. 203, 81 Pac. 349; *Burke* v. *Connolly*, 76 Misc. Rep. 337, 135 N. Y. Supp. 179, 2 Dillon on Municipal Corporation, 5th ed., sec. 401; High on Extraordinary Legal Remedies, 2d ed., sec. 410; 3 Abbott on Municipal Corporations, sec. 1107; Mechem on Public Officers, sec. 942.)

The supreme court of Missouri, in an opinion handed down in 1917, held that the writ was properly refused a civil service employee wrongfully discharged, when it would be the duty of his superior officer to immediately remove him were he reinstated. (*State ex rel. Stickle* v. *Martin*, 195 Mo. App. 366, 191 S. W. 1064; *Rex* v. *Axbridge*, 2 Cowp. 523, 98 Eng. Reprint, 1220; *State* v. *Temperance Assn.*, 42 Mo. App. 485. *People* v. *Chicago*, 99 Ill. App. 489; *State ex rel. McMahon* v. *New Orleans*, 107 La. 632, 32 South. 22; *Ex parte Paine*, 1 Hill (N. Y.), 665; *Stepney's Case*, 1 Bulst. 174, 80 Eng. Reprint, 864; 23 Am. Eng. Ency. of Law, 2d ed., 453; 2 Spelling on Injunctions, sec. 1380.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This proceeding was instituted to compel the city council of Missoula to reinstate relator in his office as policeman. In the application for the writ it is alleged that Missoula is a city of the first class under the commission form of government; that relator was a duly appointed, qualified and acting policeman in the service of the city from October, 1910, until March 8, 1918, when he was discharged without an accusation having been preferred against him, without notice, and without a hearing or trial. A demurrer and motion to quash were sustained and the proceeding dismissed, but upon appeal to this court the

judgment was reversed. (*State ex rel. Lease* v. *Wilkinson,* 55 Mont. 340, 177 Pac. 401.)

After the *remittitur* was filed in the district court, the respondents answered, admitting some of the allegations contained in relator's affidavit and the alternative writ, denying others, and setting forth as an affirmative defense and justification the following facts: That on March 3, 1918, relator was guilty of conduct unbecoming a police officer, giving in detail an account of the alleged misconduct; that the acting chief of police on March 8 recommended to the council that he be discharged; that the recommendation was considered by the council, and the city attorney directed to prepare proper charges; that a copy of the charges was served upon relator; that on March 9 relator gave notice of appeal, but on March 15 withdrew the same. The concluding paragraph of the special defense is as follows: "Respondents further allege that they, at all times herein mentioned, offered relator an opportunity for a full and impartial hearing at which they would determine whether or not he should be finally discharged from the police force, but that it was because of his own request and acts that no hearing has been held." Relator interposed a demurrer to a portion of this affirmative defense and a motion to strike the paragraph which detailed his alleged misconduct. The demurrer and motion were overruled and a reply filed which put in issue the affirmative allegations of the answer. The trial of the cause resulted in a judgment dismissing the proceedings, and relator appealed.

The trial court did not err in overruling the demurrer. A [1] demurrer might have been interposed to the entire answer or to the entire affirmative defense (secs. 6554, 6556, Rev. Codes), but not a portion of the latter (*Plymouth G. Min. Co.* v. *Fidelity & Guaranty Co.*, 35 Mont. 23, 88 Pac. 565).

The motion to strike should have been sustained. Neither [2] the allegations concerning the alleged misconduct nor the answer in its entirety constituted a defense or disclosed any reason why the peremptory writ should not issue.

The action taken by the city officers is disclosed more fully
[3-6]  by the record evidence introduced upon the trial than
it is in the answer, and reference will be had to this evidence
to illustrate the shortcomings of the pleading as well as the
merits of the cause.  The minutes of the city council disclose
the following:

"Missoula, Mont., March 8, 1918.
"To the Honorable Mayor and City Council:

"As councilman of the city of Missoula having charge of
the department of public safety and as acting chief of police
of said city, and after an investigation, in which I was assisted
by the city attorney, into the facts and circumstances leading
to and surrounding the fight between Policeman Morris and,
Policeman Harley H. Lease which occurred in the police sta-
tion on Sunday morning, March 3, 1918, I recommend that
the said Harley H. Lease be removed from office or employ-
ment by the council for misconduct in office and for conduct
detrimental to the best interests of the police force, subject,
however, to his right of appeal, as provided for by law, to the
council which shall fully hear and determine the matter.  Re-
spectfully, Thos. E. Kemp, Councilman having Charge of the
Department of Public Safety and Acting Chief of Police.
*    *    *

"It was moved by Mayor Wilkinson and seconded by Coun-
cilman Brechbill that the council act upon the recommenda-
tion of Councilman Kemp and that the city attorney be in-
structed to prepare charges against Policeman Harley H.
Lease in proper form and submit them to the council at an
adjourned meeting at 2 o'clock P. M. March 8, 1918.  Motion
carried.  *    *    *

"A quorum being present, the mayor called the meeting to
order at 2 P. M.  The following was read: Mr. Harley H.
Lease, policeman of the city of Missoula: This is to notify you
that you are this day removed from office or employment as a
policeman for the city of Missoula, Montana, for misconduct in
office and for conduct detrimental to the best interests of the

police force of the said city of Missoula. You are to under-stand, however, and are hereby advised that you may appeal this matter to the council where you may present witnesses in your behalf and have an opportunity to question witnesses appearing against you so that the matter may be fully de-termined and heard by the council. [The alleged misconduct is set forth in detail.] This shall be sufficient notice to you of your removal from office by the council and from the police force of the city of Missoula, and upon the receipt hereof you will turn over and deliver to Councilman Kemp any property of the city in your custody or charge. Ordered by the council of the city of Missoula in special session held this 8th day of March, 1918. H. T. Wilkinson, Mayor. Attest: Ruth E. Kellogg, City Clerk. [Seal.]    *   *   *

"It was moved by Councilman Kemp and seconded by Councilman Brechbill that Policeman Harley H. Lease be re-moved from office because of misconduct in office and that the charges of misconduct as prepared by the city attorney, to-gether with a notice of his removal, be served upon him, and that a copy of these proceedings be spread in full upon the minutes. Motion carried."

The notice to relator and the copy of the charges served upon him, referred to in the answer, are contained in the notice above, signed by the mayor and attested by the city clerk and served on the evening of March 8.

If the council and the members had planned with the ut-most care and deliberation to disregard every provision of the law applicable to the discipline of a member of the police force, they could not have succeeded better than they did in this instance. By subdivision F of section 25, Chapter 57, Laws of 1911, the members of the police department, other than the chief of police, are made subject to the civil service provisions of the Act. Subdivision C of the same section pro-vides that all persons under the civil service shall be subject to removal from office by the council (for misconduct or fail-ure to perform their duties) under such rules and regulations

as it may adopt. By rule 9 the council adopted the procedure prescribed by the remaining portion of subdivision C above, and by sections 3308 and 3309, Revised Codes, so far as applicable.

These statutes provide two distinct methods of procedure. The first, authorized by subdivision C above, is summary in character, and is initiated by the act of the chief of police suspending or discharging a policeman. That act is subject to review by the superintendent of the police department, and from his order approving it the accused policeman may appeal to the city council within five days after the order is made, and upon the appeal being perfected the council shall "fully hear and determine the matter." The other procedure, provided by sections 3308 and 3309, Revised Codes, is initiated by charges filed with the council, which shall fix a time for hearing, furnish the accused with a copy of the charges, and give him at least two days' notice before the trial, and shall at the time appointed hear and determine the matter.

These proceedings are purely statutory. The council is constituted a special tribunal with *quasi*-judicial authority. Its jurisdiction depends upon a substantial compliance with the statutes without which it has no power to proceed. Under the procedure first mentioned, the council has no original jurisdiction in matters of police discipline. It acquires jurisdiction only by appeal from an order of the superintendent of the department, reviewing the act of the chief of police, and the chief of police may suspend or discharge only for the causes enumerated, *viz.:* "For neglect of duty or disobedience of his orders."

There was not any attempt to proceed in conformity with the provisions of subdivision C above. The acting chief of police did not suspend or discharge the relator, but merely recommended to the council that he be removed from office. There was therefore no order made from which relator could appeal, and his attempted appeal was ineffectual for any purpose.

Assuming that charges were actually preferred against the relator by someone, it then became the duty of the counsel, under sections 3308 and 3309, Revised Codes, to set a time for trial, furnish the accused with a copy of the charges, give him at least two days' notice, and then proceed to hear and determine the matter at the time appointed. Instead of observing these requirements, the council constituted itself the accuser, trier and executioner. It preferred the charges, conducted a trial *ex parte,* determined the guilt of the accused, discharged him from his office, and thereafter, and for the first time, gave him notice that charges had been preferred against him and of what it had done. The council was not without a sense of humor, as indicated by the concluding paragraph of the answer quoted above, and the fact that the accused was informed that he might appeal from the order of the council discharging him to the same council which had already prejudiced his case, fixed the penalty, and carried its judgment into execution. There is no appeal from an order of the council to the council, and if relator had sought to avail himself of the suggestion contained in the notice to him, the council would not have acquired jurisdiction to conduct a hearing or trial.

Whether a trial before an impartial tribunal would have resulted in relator's conviction or acquittal cannot be determined. The district court had no authority to investigate the charges, and most of the evidence introduced upon the trial was altogether irrelevant and immaterial. The only issue before the court arose upon the allegation of the relator that he was discharged without notice and without a hearing, and the denial thereof in the answer. The denial, however, is to be read in connection with the allegations of the affirmative defense which assume to detail the action taken by the council, and, thus considered, the answer does not constitute a justification. It fails to disclose that the statutory requirements were complied with, while the evidence demonstrates that they were disregarded flagrantly.

It is the purpose of the statute, expressed in no uncertain terms, that a member of the police force in a city of the first class shall not be discharged without a hearing or trial, and when it was made to appear conclusively, as it does, that relator was discharged without first having been given notice and a hearing, his right to reinstatement was established.

The judgment is reversed and the cause is remanded to the district court, with directions to issue the peremptory writ of mandate.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and GALEN concur.

(Submitted March 8, 1921. Decided March 19, 1921.)