HENRY W. AYERS *vs.* ARTHUR W. HATCH & others.

Suffolk.　December 14, 1899. — March 3, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Civil Service — Veteran — Removal of Assessor by Mayor.*

An assessor is not a veteran holding an office or employment in the public service of the city of Everett within the meaning of St. 1896, c. 517, § 5.

The removal by the mayor of the city of Everett of a person from the office of assessor for "the good of the service," is valid under the charter of that city.

PETITION, filed May 1, 1899, against the mayor, the seven aldermen, the city clerk and city treasurer of the city of Everett, and William W. Partridge, for a writ of mandamus to determine whether the petitioner or Partridge was an assessor of that city. At the hearing before *Morton*, J., it appeared that the petitioner, a veteran of the civil war, was duly appointed and confirmed as an assessor of Everett for the term of three years, and that he entered upon his duties on April 21, 1897, and continued therein until January 16, 1899, when the respondent Hatch, the mayor, removed him, without a hearing, by the following order: " I have this day removed you from the Board of Assessors. I do this for the good of the service."

The judge reported the case for the consideration of the full court, such disposition to be made of it as should seem meet.

*E. R. Anderson*, ( *C. W. Bartlett* with him,) for the petitioner.
*H. H. Newton*, for the defendants.

MORTON, J. The first question is whether the petitioner is a " veteran holding an office or employment in the public service " of the city of Everett within the meaning of St. 1896, c. 517, § 5.

We think that he is not. It is plain, it seems to us, that the statute was intended to provide for the preference of veterans in the offices and employments coming within the scope of St. 1884, c. 320, commonly known as the civil service act, and the acts in amendment thereof, and that the provisions of § 5 apply to veterans who hold offices and employments under and pursuant to the statutes relating to civil service and the rules established by the civil service commissioners. Section 1 defines the word "veteran" as used in the act. Sections 2, 3, and 6 relate to the examination and appointment of veterans to positions " in the public service classified under chapter three hundred and twenty of the acts of the year eighteen hundred and eighty-five and acts in amendment thereof and the civil service rules thereunder, subject to such rules," and to their employment " in the labor service of the Commonwealth and of the cities and towns thereof " under rules established by the civil service commissioners. Section 4 contains directions to the commissioners respecting the preparation of lists of applicants for positions in the public service who have passed the examinations, and of those who have been certified for appointment or employment. Then comes § 5, and it seems to us that it would be wresting it from its connection and giving to it an effect that it was not intended to have to hold that it was intended to apply to any veteran who was in the public service of a town or city in an office or employment of a civil nature. The more reasonable construction is, we think, that it was intended to prevent the removal or suspension or transfer without his assent and without a full hearing of a veteran who had been appointed under the statutes and rules relating to the civil service; thus continuing to him after his appointment the same preference over others who were not veterans, as before his appointment.

We find nothing in the various veterans' preference acts to lead us to suppose that a different result was intended. They are all embraced in St. 1896, c. 517, and are repealed by § 8 of that act and need not therefore be further considered. St. 1887, c. 437; St. 1889, c. 473; St. 1894, c. 519; St. 1895, c. 501.

Neither do we find anything in the civil service act or in the amendments thereto which leads to a contrary result. The first provision in regard to preferring veterans is in the civil service

act itself. St. 1884, c. 320, § 14, cl. 6. Manifestly this refers to offices coming within the scope of that act and no others. Section 15 excludes elective officers amongst others from the operation of the act. From an early period in the history of the Commonwealth the office of an assessor has been elective and still is. 11 Plymouth Col. Rec. 42. 2 Mass. Col. Rec. 152. Prov. St. of 1692–93, c. 28, 1 Prov. Laws (State ed.) 65. St. 1785, c. 50. Rev. Sts. c. 15, § 33. Pub. St. c. 27, § 28.

Assessors did not therefore come within the original civil service act of 1884. The only amendment affecting the question which we are now considering is St. 1893, c. 95. By that statute the word " elective " in § 15 of St. 1884, c. 320, was stricken out and the words " who are elected by the people or a city council " were inserted, so that it now reads " Judicial officers and officers who are elected by the people or a city council," etc. " shall not be affected as to their selection or appointment by any rules made as aforesaid." The object of the amendment evidently was to define with greater certainty what was meant by the word " elective," and the words " who are elected by the people " signify, it seems to us, officers whom the people are and have been accustomed to elect. Assessors are obviously such officers. Moreover, it is to be observed that " the civil service statutes and rules relate only to certain subordinate offices and employments," (*Brown* v. *Russell*, 166 Mass. 14, 15,) and the intention to subject the office of assessor to them in any case should be plain and unmistakable.

The remaining question is whether the removal was valid under the city charter, which provides that " any officer so appointed (i. e. by the mayor) may be removed by the mayor for such cause as he shall deem sufficient and shall assign in his order of removal, and the removal shall take effect upon the filing of the order therefor in the office of the city clerk and the service of a copy of such order upon the officer removed, either personally or at his last or usual place of residence." St. 1892, c. 355, § 29. The petitioner was appointed by the mayor.

The charter provides that " the mayor shall be the chief executive officer of the city, and the executive powers of the city shall be vested in him, and be exercised by him either personally or through the several officers and boards in their respec-

tive departments, under his general supervision and control." St. 1892, c. 355, § 26. The responsibility for the due and proper administration of the affairs of the city is thus placed largely upon the mayor, and consistently therewith he is given the power of removal.// The fact, however, that removals are to be for cause, repels the idea of removal at pleasure, even though the sufficiency of the cause is for him to decide. The question then arises, what jurisdiction has this court in regard to removals? The answer it seems to us, is this. Cause implies, we think, a reasonable ground of removal, and not a frivolous or wholly unsatisfactory or incompetent ground of removal. If the cause assigned is a reasonable one, then, whether under the circumstances it is sufficient to justify a removal, is for the mayor to decide and his decision is final. But whether the cause assigned constitutes, of itself, as matter of law, ground for removal, is a question for this court to determine. In the present case the cause assigned was " the good of the service," and manifestly it seems to us, that was good ground for removal. The natural inference would be that in some respect the petitioner had failed to perform his duties or was incompetent or inefficient, or was an unsuitable person for the position to which he was appointed. If the charter provided (as in the New York case relied on by the petitioner (*People* v. *New York,* 19 Hun, 441 ; *People* v. *Nichols,* 79 N. Y. 582 ; *People* v. *New York Fire Commissioners,* 12 Hun, 500)) that removals should be " for cause and after an opportunity to be heard," no doubt he would have been entitled to a particular statement of the grounds embraced in the cause assigned. But we do not see how it can be said that the cause assigned is not in law a ground for removal.//

The result is that we think that the petition should be dismissed.

*So ordered.*