STATE ex rel. NAGLE, Attorney General, Relator, v. SULLIVAN et al., Respondents; BAUMGARTNER, Appellant.

(No. 7,364.)

(Submitted November 14, 1934. Decided January 3, 1935.)

[40 Pac. (2d) 995.]

*Mr. S. C. Ford, Mr. R. J. Reynolds* and *Mr. W. P. Costello,* for Appellant, submitted a brief; *Mr. Ford* argued the cause orally.

428

430

*Mr. E. G. Toomey* and *Mr. Harry P. Bennett,* for Respondent Sullivan submitted a bricf and argued the cause orally.

432

434

Opinion: PER CURIAM.

Application for writ of *quo warranto* by the State on the relation of Raymond T. Nagle, as Attorney General, against W. P. Sullivan and A. C. Baumgartner.

The State Fish and Game Commission, composed of five members, and as it now exists, was created by section 3650, Revised Codes of 1921. Section 3651 provides for the appointment of the members of the commission by the Governor, and that the selection shall be made without regard to political affiliations, "but for the sole welfare of the fish, game, and wild life of the state." It is then provided that the members first appointed shall hold or serve for one, two, three and four years, and thereafter, on the expiration of these terms, the Governor shall appoint commissioners "to serve for four years, unless sooner removed." The Governor is authorized to fill all vacancies and is given "the power to remove any member of said commission for cause or for the good of the commission."

On May 23, 1932, all members of the existing commission having resigned, Governor Erickson made, and filed with the Secretary of State, the following appointments:

William Steinbrenner, for the term ending April 15, 1933.

Harry P. Stanford, for the term ending April 15, 1934.

B. L. Price, for the term ending April 15, 1934.

W. P. Sullivan, for the term ending April 15, 1935; and William F. Flynn, for the term ending April 15, 1936.

Steinbrenner was evidently appointed for a four-year term at the expiration of the term above specified. Each of the men named commissioner duly qualified in the manner prescribed by law and entered upon the discharge of the duties of his office.

On March 13, 1933, Governor Erickson resigned, and the powers and duties of the office of Governor devolved upon Lieutenant-Governor F. H. Cooney.

On April 17, 1934, the terms of commissioners Stanford and Price having expired, acting Governor Cooney subscribed and filed with the Secretary of State an instrument in writing in which he declared: ''I have this day revoked and do hereby revoke the appointments heretofore made, of the following named members of the State Fish and Game Commission, said revocation being made for the good of the Commission: W. P. Sullivan, of Chouteau County, appointed for the term ending April 15, 1935; William F. Flynn, of Deer Lodge County, appointed for the term ending April 15, 1936; William Steinbrenner, of Missoula County, appointed for the term ending April 15, 1937.''

On the same day acting Governor Cooney subscribed and filed with the Secretary of State the following declaration: ''I have this day appointed and do hereby appoint the following named persons to be members of the State Fish and Game Commission: A. C. Baumgartner, of Great Falls, Cascade County, for the term ending April 15, 1935, to fill the vacancy caused by the removal of W. P. Sullivan; P. G. Gutensohn, of Whitefish, Flathead County, for the term ending April 15, 1936, to fill the vacancy caused by the removal of William F. Flynn; J. J. Harper, of Anaconda, Deer Lodge County, for the term ending April 15, 1937, to fill the vacancy caused by the removal of William Steinbrenner; Ray G. Lowe, of Glendive, Dawson County, for the term ending April, 1938;

W. C. Keil, of Billings, Yellowstone County, for the term ending April 15, 1938.''

The above-named five men took the usual oath of office and filed the required bonds, and thereafter, on April 19, 1934, met in the office of the Fish and Game Commission, claiming to constitute that commission, and proceeded to transact business as such, and on the following day, Sullivan, Flynn and Steinbrenner met in that office, claiming to constitute the commission, and likewise proceeded to transact business.

On April 21, 1934, the Attorney General filed his complaint herein, reciting the foregoing facts, and alleged the importance of the duties of the commission and their orderly discharge, and that Sullivan and Baumgartner each contend that the other is attempting to usurp, and is usurping and unlawfully holding and exercising the powers of the office, and that he cannot determine who is right. The relator prays that the defendants be required to try their rights before the court, and that the court determine which one of the defendants, if either, is entitled to the office.

Defendant Sullivan filed an answer and cross-complaint, in which he alleged that his attempted removal was void and of no effect, as the sole ground of the Governor's action was the refusal of the commission to appoint a game warden of the Governor's selection, and the action was taken without notice, hearing or opportunity to be heard.

Defendant Baumgartner filed an answer and cross-complaint, and a reply to Sullivan's pleadings, wherein he alleged, on information and belief, many matters which, if proved, would constitute grounds for removal of the members of the commission, and alleged, on information and belief, that these matters were known to the Governor and were the moving cause of the order of removal. He admitted that Sullivan was removed without notice and hearing but alleged that such preliminaries were not necessary.

Sullivan thereafter filed a motion to strike all matter in the Baumgartner pleadings reflecting on the members of the commission as conclusions, surplusage and immaterial allega-

tions, "unless and until the Executive assumes to act after accusation in writing, notice and hearing."

The matter was set for hearing on June 27, 1934, before Honorable Lyman H. Bennett, Judge of the Fifth Judicial District, and at the opening of the trial, Sullivan moved for judgment on the pleadings, on the ground that no one of the Baumgartner pleadings raises "a question of fact upon the material issues," but show upon their face that Sullivan is entitled to the relief for which he prays.

It was agreed that the motion to strike and the motion for judgment should be submitted together, and they were argued, submitted and taken under advisement. On September 12, 1934, Judge Bennett made and filed an order granting the motion for judgment, and declaring that it disposes of the motion to strike. Formal judgment in *quo warranto,* in favor of Sullivan and against Baumgartner, followed. Hence the appeal.

The sole question presented here is whether or not the Governor had authority to remove Sullivan without notice and an opportunity to be heard in his defense.

At common law an officer could only be removed for cause and after a hearing (Throop on Public Officers, 358), but this result followed from the English rule that offices were incorporeal hereditaments and one might have an estate in them. (23 Am. & Eng. Ency. of Law, 328.) The American concept of a public office is that of a public trust or agency created for the benefit of the people, and in which the incumbent has not a property right, to be administered under legislative control in the interest of the people. (*Newton* v. *Mahoning County,* 100 U. S. 548, 25 L. Ed. 710; *Robinson* v. *White,* 26 Ark. 139; *Ford* v. *Board of State Harbor Commissioners,* 81 Cal. 19, 22 Pac. 278; *State* v. *Hobart,* 12 Nev. 408; *People ex rel. Robertson* v. *Van Gaskin,* 5 Mont. 352, 6 Pac. 30; *Territory* v. *Carson,* 7 Mont. 417, 16 Pac. 569; *Lloyd* v. *Silver Bow County,* 11 Mont. 408, 28 Pac. 453.) Where an office is created by statute, it is wholly within the control of the legislature (*People ex rel. Robertson* v.

438

*Van Gaskin,* above), and "is taken in full view of all the vicissitudes of legislative action, including removal for such cause as the legislative assembly may deem sufficient." (*State ex rel. Bullock* v. *District Court,* 62 Mont. 600, 205 Pac. 955.)

This being the American view of the nature of a public office, the doctrine has been developed by the courts of this country that, when a definite term of office is not fixed by law, the appointing power may remove the appointee at pleasure and without notice or opportunity to be heard (Throop on Public Officers, 358), and, in any case, the legislature may, if it sees fit, provide for the removal of an incumbent without notice or hearing (*State ex rel. Payne* v. *District Court,* 53 Mont. 350, 165 Pac. 294; *People* v. *Draper,* 67 Misc. 460, 124 N. Y. Supp. 758; *Trimble* v. *People,* 19 Colo. 189, 34 Pac. 981, 41 Am. St. Rep. 236; *Lynch* v. *Chase,* 55 Kan. 367, 40 Pac. 666; *Eckloff* v. *District of Columbia,* 135 U. S. 240, 10 Sup. Ct. 752, 34 L. Ed. 120), but the extent of the power and the manner of its exercise is to be determined by the wording of the applicable statute.

Where provision is made for the appointment of an officer, but no definite term is prescribed, the appointing power may remove the appointee at will, without notice or opportunity to be heard. (Throop, above, 358; *Patten* v. *Vaughan,* 39 Ark. 211; *People* v. *Shear,* 73 Cal. xix, 15 Pac. 92; *Newsom* v. *Cocke,* 44 Miss. 352, 7 Am. Rep. 686; *People* v. *City of Brooklyn,* 149 N. Y. 215, 43 N. E. 554; *Keenan* v. *Perry,* 24 Tex. 253; *Ex parte Hennen,* 13 Pet. (U. S.) 230, 10 L. Ed. 138; *Field* v. *Commissioners,* 32 Pa. St. 479.)

The power to appoint carries with it, as an incident, in the absence of constitutional or statutory restraint, the power to remove (*Touart* v. *State,* 173 Ala. 453, 56 So. 211; *Cameron* v. *Parker,* 2 Okl. 277, 38 Pac. 14; *Sponogle* v. *Curnow,* 136 Cal. 580, 69 Pac. 255; *Sanders* v. *Belue,* 67 S. C. 171, 38 S. E. 762), but provision for appointment for a fixed term constitutes such restraint, and, in the absence of any provision for summary removal, one appointed for a fixed

term can be removed only for cause. (23 Am. & Eng. Ency. of Law, 437, and cases cited from many jurisdictions.)

This phrase "for cause," as used in this connection, means for reasons which the law and sound public policy recognize as sufficient warrant for removal (*Street Commissioners* v. *Williams*, 96 Md. 232, 53 Atl. 923; *In re Nichols*, 57 How. Pr. (N. Y.) 395), that is "legal cause" (*Attorney General* v. *Crowley*, 75 N. H. 393, 74 Atl. 1055, 139 Am. St. Rep. 725), and not merely a cause which the appointing power, in the exercise of discretion, may deem sufficient. (*State* v. *Common Council of City of Duluth*, 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595.) It follows, inevitably, that when a statute provides for an appointment for a definite term of office, without provision otherwise, or provides for removal "for cause," without qualification, removal may be effected only after notice has been given to the officer of the charges made against him and he has been given an opportunity to be heard in his defense. (Mechem on Public Offices and Officers, 287; *Welch* v. *Ware*, 161 Cal. 641, 119 Pac. 1080; *Abrams* v. *Daugherty*, 60 Cal. App. 297, 212 Pac. 942; *Carter* v. *Durango*, 16 Colo. 534, 27 Pac. 1057, 25 Am. St. Rep. 294; *Lynch* v. *Chase*, 55 Kan. 367, 40 Pac. 666; *State* v. *Smith*, 35 Neb. 13, 52 N. W. 700, 16 L. R. A. 791; *Honey* v. *Graham*, 39 Tex. 1; *Hallgren* v. *Campbell*, 82 Mich. 255, 46 N. W. 381, 21 Am. St. Rep. 557, 9 L. R. A. 408; *Willard's Appeal*, 4 R. I. 595.) The rigorous application of the rule can only be evaded in such cases by an express grant of power to remove at will.

"It is the fixity of tenure that destroys the power of removal at pleasure otherwise incident to the appointing power. * * * The reason of this rule is the evident repugnance between the fixed term and the power of *arbitrary* removal. The effect of the rule is that the right to hold during a fixed term can only be overcome by an express grant of power to remove at pleasure. An inferential authority to remove at pleasure cannot be deduced, since the existence of a definite term, *ipso facto*, negatives such an inference and implies a contrary presumption, i. e., that the

incumbent shall hold to the end of his term, subject to removal for cause." (*State ex rel. Gallagher* v. *Brown*, 57 Mo. App. 203, expressly adopted by the supreme court in *State ex rel. Mosconi* v. *Maroney*, 191 Mo. 548, 90 S. W. 141; *State* v. *Crandell*, 269 Mo. 44, 190 S. W. 889.) While a few cases to the contrary may be found, the foregoing declarations are supported by the overwhelming weight of authority.

Under this class of statutes, the requirement of notice and hearing cannot be evaded by any subterfuge. (Throop, above, 350; *State ex rel. Campbell* v. *Board of Police Commissioners*, 88 Mo. 144, affirming 14 Mo. App. 297.)

When the applicable statute provides that the appointing power may remove the appointee for such case as *he* (or they) "may deem sufficient" or assign in the order of removal, or contains a provision having a similar meaning, it is held to grant discretionary power, thus negativing the necessity for notice and hearing. (See *O'Dowd* v. *Boston*, 143 Mass. 443, 21 N. E. 949; *Roth* v. *State ex rel. Kurtz*, 158 Ind. 242, 63 N. E. 460; *Trimble* v. *People*, above.)

In the case at bar, the tenure is for a fixed term, to-wit, four years "unless sooner removed," which phrase implies power in the appointing power to remove (*Townsend* v. *Kurtz*, 83 Md. 350, 34 Atl. 1123, 1126; *State ex rel. Little* v. *Mitchell*, 50 Kan. 295, 33 Pac. 104, 105, 20 L. R. A. 306), but the statute does not, in express terms, grant discretionary power to the Governor, unless such a grant can be read into it by reason of the use of the phrase "for the good of the commission." We cannot construe this phrase alone, for it must be remembered that the statute reads, "for cause or for the good of the commission," and, in construing a statute, "every word, phrase, clause or sentence employed is to be considered and none shall be held meaningless, if it is possible to give effect to it" (*Campbell* v. *City of Helena*, 92 Mont. 366, 16 Pac. (2d) 1), and the intention of the legislature must be ascertained and followed, if it is possible to do so, gathering that intention, first, if possible, from the plain meaning of the words employed. (*Clark* v. *Olson*, 96 Mont.

417, 31 Pac. (2d) 283.) The plain meaning of the words "for cause" has been demonstrated; they cannot be read out of the statute, but the two phrases employed in the disjunctive must, if possible, be harmonized and given effect. In this connection, reference to precedent from other jurisdictions is of slight aid; no case construing the exact phraseology of our statute, and few interpreting statutes of similar tenor, can be cited.

In the case of *Ward* v. *Board of Regents of the Kansas State Agricultural College,* (C. C. A., 8th Circuit) 138 Fed. 372, it is in effect held that the provision granting to the board power to remove any teacher "whenever the interests of the college shall require," standing alone, vests arbitrary power in the board.

In Massachusetts it has been held that the power to remove a street commissioner "when the best interests of the town so requires" authorized summary removal, but this conclusion was reached by holding that the Act should be construed as reading as it did before an, apparently, unauthorized change was made by striking from the statute the phrase "in the judgment of the selectmen," which had preceded the phrase "the best interests of the town so requires." (*Lacy* v. *Selectmen,* 240 Mass. 118, 133 N. E. 90.)

The decision in *Wilcox* v. *People,* 90 Ill. 186, contains language which would justify a holding that the power granted the Governor to remove a member "for the good of the commission," standing alone, would do away with the necessity for notice and hearing; but a reading of the opinion discloses that the court there held that, because the *Constitution* provided that "the Governor shall have power to remove any officer he may appoint, in case of incompetency, neglect of duty, or malfeasance in office, and he may declare his office vacant and fill the same," neither the legislature nor the courts may dictate to the Governor in what manner he shall perform his duty. This latter declaration is grounded upon the theory, existing in some jurisdictions but not in this state, that, because the three departments of government are

co-ordinate and independent, the courts cannot, in any case, review or control the action of the Governor.

The nearest approach to the case at bar is found in the provision for the removal of officers in civil service positions "for cause or when the good of the service shall be subserved thereby," which provision is held to require notice and hearing before action may be taken. (*Pratt* v. *Board of Police,* 15 Utah, 1, 49 Pac. 747; *State ex rel. Eckles* v. *Kansas City,* (Mo. App.) 257 S. W. 197.) These cases may stand on a somewhat different footing from the instant case, but in the *Pratt Case* the court based its holding on the broad ground "that any man should be condemned unheard is contrary to every principle of natural justice, and courts are not inclined to countenance such arbitrary power unless under the mandate of positive law; nor will they aid by judicial interpretation." The court then deduces the intention of the legislature from all the provisions of the Act.

In determining the intention of our legislature in employing the two quoted phrases in the disjunctive, a brief review of the history of the Fish and Game Department will be enlightening.

This department was created in 1901 and, from its creation up to 1917, was under the exclusive control of the Governor, who appointed a game warden for a fixed term of four years (sec. 1949, Rev. Codes 1907), but who was, by the express declaration of the Act, removable "at the will" of the Governor (sec. 1952), and who appointed deputies removable at his will. (Sec. 1953.) The Legislative Assembly of 1907 created a Fish Commission, consisting of the game warden and two members to be appointed by the Governor for a term of four years, with no reference made to removal (Chap. 176, Laws of 1907); in 1911 two members were added to the commission (Chap. 18, Laws of 1911). Later this commission was converted into a Fish and Game Commission, consisting of the fish and game warden and four members to be appointed by the Governor "by and with the advice and consent of the Senate," for the term of four years (sec.

8, Chap. 173, Laws of 1917), and again no provision was made for the removal of these appointees. It is therefore clear that up to the time of the enactment of the present law (Chap. 193, Laws of 1921), the Governor had no discretionary power over his appointees as members of this commission, but that, under all of the authorities, they could be removed for cause after notice and hearing.

The present law deprives the Governor of the power of appointment and removal of the fish and game warden, and vests these powers in the commission, whose power to remove this officer is absolute, as he is to "continue in office at the pleasure of said commission." (Sec. 3655, Rev. Codes 1921; amended sec. 3, Chap. 192, Laws of 1925.)

If the Governor now has discretionary power to remove a ▮ member of the commission, it is because the power is expressly granted by the Act of 1921. The Act of 1917, followed by that of 1921, clearly denotes the intention of the legislature to remove the Fish and Game Department from the control of the Governor and to create a commission entirely divorced from political activity, and of which there will be, at all times, a majority of experienced members—a continuing body removed from political control and manipulation. (See secs. 3651, 3658, Rev. Codes 1921.) This plain policy might be practically overthrown and the clear intention of the legislature defeated, if power rests in the appointing authority in every instance summarily to remove one, or all, of the members of the commission for reasons existing only within the breast of the higher authority, and without notice of the charges and opportunity to disprove, if possible, any reflection cast upon his, or their, personal or official reputation. (*Bannerman* v. *Boyle,* 160 Cal. 197, 116 Pac. 732.)

It has been held that where removal is authorized "for the good of the service" the "natural inference would be that in some respect the petitioner has failed to perform his duties, or was incompetent or inefficient, or was an unsuitable person for the position for which he was appointed"

(*Ayers* v. *Hatch,* 175 Mass. 489, 56 N. E. 612), and that, unless the statute clearly indicates a contrary intention, "the law, in accordance with the principles of justice, principles which are fundamental and eternal, will require that notice be given before any person be passed upon, either in person, estate or any matter or thing to which he is entitled." (*State ex rel. Reid* v. *Walbridge,* 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663.)

Having at all times up to 1921 denied to the Governor the authority to remove members of the commission, the legislature, in the present Act, again provided for a fixed term of four years, but added the phrase "unless sooner removed," which phrase implies power in the appointing authority to remove (*Townsend* v. *Kurtz,* 83 Md. 350, 34 Atl. 1123, 1126; *State ex rel. Little* v. *Mitchell,* 50 Kan. 295, 33 Pac. 104, 105, 20 L. R. A. 306). The legislature specifically declared, however, that the removal shall be "for cause," and then added the phrase, "or for the good of the commission." The employment of these two phrases in the alternative would indicate that the legislature had in mind that, although its intention was that the members should be removable for cause, there might be additional reasons, not strictly within the definition of "legal cause" why, at times, a member of the commission should be removed in the best interests of the people served, and therefore vested this additional authority in the Governor.

We do not assume to declare that, under this construction of the power granted, a condition might not arise which would justify the Governor in removing a member of the commission without notice and hearing "for the good of the commission"; but we do hold that whenever the charges on which the Executive proposes to act involve malfeasance, misfeasance or nonfeasance in office, or directly reflect upon the official or personal integrity of the incumbent whom he proposes to remove, the statute requires notice and the opportunity to disprove, if possible, the charges made.

Defendant Baumgartner's pleadings offer to show that the Governor had ample cause for the removal of Sullivan

and based his action thereon, which brings the case within this rule. His attempt to justify the action is unavailing as an *ex post facto* showing of cause cannot cure failure to give the necessary notice of hearing on such charges (*Board* v. *Williams*, 96 Md. 232, 53 Atl. 823) ; "every condition precedent must be fulfilled to give validity to the act of removal." (23 Am. & Eng. Ency. of Law, 450.)

After a careful and painstaking consideration of the pleadings and of the law governing, we are convinced that the judgment on the pleadings was justified.

Judgment affirmed.

MR. JUSTICE STEWART: I concur in the result reached in the majority opinion, but I do not agree with everything that is said therein. I do agree with what is said by the majority relative to the necessity for notice and hearing when removal by the Governor is actually for cause.

No one denies the right of the Governor to remove a commissioner. The statute says: "The members of the commission shall be appointed by the Governor. The Governor is hereby given the power to remove any member of said commission for cause or for the good of the commission." This controversy does not reach the question of the Governor's right to remove a commissioner. It only goes to the procedure.

I do not believe that the courts have any right to invoke and impose upon the Governor technical rules of procedure in the discharge of his duty for the good of the commission. However, I am impelled to agree with the proposition that whenever the removal is based upon grounds of cause, ordinary fairness should dictate that the accused office-holder be given a hearing and an opportunity to defend and protect his good name, his reputation and his official record. The injection into the matter of grounds which constitute cause, which involve moral turpitude and reflect upon the personal and official integrity of the office-holder, and in fact include misfeasance and malfeasance in office, brings the immediate

matter within the realm of cause and rightfully demands notice and hearing.

If the matter had proceeded solely upon the general grounds originally assigned by the Governor without the injection of the specific matters of cause, the result should have been different. I think the statute gives the Governor the right to remove a commissioner without notice or hearing when it is done for the good of the commission—for the better administration of the affairs of the department. The legislature undoubtedly intended that he should have that right, and said as much in terms that to my mind are plain and unequivocal. It requires no citation of authorities to sustain this power. The language requires no judicial interpretation.

The two provisions stated in the disjunctive as grounds for removal are separate and different things. They should not be confused. The issues in this case have been confused to such an extent that the reasons for the action of the Governor have been entirely shifted from the broad grounds of "good of the commission" to specific charges of wrongdoing, of malfeasance and misfeasance in office. Such charges warrant notice and hearing. One charged with such grave offenses is entitled to an opportunity to meet and controvert them, if he can do so.

The obvious thing about the controversy is that it does not go to the merits. It does not involve the right of the Governor finally to remove a commissioner. It only involves the procedure to be followed to bring about that result.

MR. JUSTICE ANGSTMAN, dissenting: I am unable to subscribe to the views of the majority in the disposition of this appeal. In consideration of the single question involved, it is important to remember that a public officer takes his office subject to legislative provisions respecting the power of removal. It is competent for the legislature to provide for the removal of an officer with or without notice and opportunity for hearing. The only question here is whether notice and an opportunity for a hearing are requisite before the Governor

may remove a fish and game commissioner. The legislative intent as ascertained from the statute must govern.

The statute simply states that the Governor is given the power to remove any member of the commission "for cause or for the good of the commission." There are many cases holding that where the statute provides for the removal of an officer "for cause" without any qualifying words, it contemplates notice and a hearing. Other cases take the opposite view. (*State* v. *Sanchez,* 32 N. M. 265, 255 Pac. 1077, and cases therein cited; *State ex rel. Hatton* v. *Joughin,* 103 Fla. 877, 138 So. 392; *State ex rel. Kennedy* v. *McGarry,* 21 Wis. 502.)

In most of the cases holding that notice and hearing are essential, the statute or Constitution enumerates certain specified causes, such as malfeasance in office, drunkenness, incompetency and the like. Where the statute simply states that an officer may be removed "for cause" without any qualifying words and without specifying what constitutes a "cause," the removing power has authority to determine what shall constitute cause, as well as to determine whether that cause exists. (Compare *Boyd* v. *Pendegast,* 57 Cal. App. 504, 207 Pac. 713, and cases therein cited; *State ex rel. Hatton* v. *Joughin,* 107 Fla. 850, 145 So. 174.) The removing power has a wide discretion in such cases.

Whatever may be said as to whether notice and hearing are necessary before an officer may be removed for cause where those mentioned above are the only grounds for removal and where the statute is silent on the question of notice, I think our statute bears irrefutable evidence that notice and hearing are not necessary to vest jurisdiction in the Governor to remove a fish and game commissioner, and this whether he is prompted to remove him for cause or for the good of the commission. The Governor's authority is found in section 3651, Revised Codes 1921. The Act in question was passed in 1921. The words "for cause" are used elsewhere in the same Act. Thus in the very next section of the Act, the Fish and Game Commission is given power "to discharge any ap-

pointee or employee of such commission, for or without cause, at any time." Can it be that under this section, if the commission decides to discharge an appointee for cause, it must give notice and conduct a hearing, whereas if the discharge is without cause, no notice or hearing is necessary? The question, of course, calls for a negative answer. The employees of course have no fixed term, but the legislature does not appear to have given a different meaning to the words "for cause" when speaking of the right of removal of one holding a fixed term.

Section 3655 provides that the commission shall appoint a fish and game warden, "who shall continue in office at the pleasure of said commission." Certainly, if this language is given effect, he is subject to removal without notice or hearing. But the same section also states that he "may be removed from office by said commission for neglect of duty, incompetency, or any other good cause." If the words "for cause" carry with them notice and hearing, then the warden could not be removed, though his tenure is at the pleasure of the commission, without notice and hearing. This is not the rule in any jurisdiction where the tenure is at the pleasure of the appointing power. Hence the words "for cause" as used in that section, are not qualified by the words "after notice and hearing."

As further evidence of the fact that the legislature did not intend that notice shall be given before the Governor may remove a commissioner, we have section 3661, which gives the commission authority to remove fish and game wardens whose tenure is fixed by the commission. (Sec. 3656.) It specifically provides that "any deputy in the first and second grade shall not be removed unless furnished with reason for removal and given a hearing in his own defense." The legislature was thus dealing specifically with the question of notice and hearing, and had it intended that notice should be given and a hearing held before the Governor could remove a commissioner, it would have said so. The effect of the Acts in question is to restrict the power of removal in the hands of the commission

when dealing with first and second grade deputies so as to require that notice and a hearing be had. The legislature did not see fit to thus restrict the Governor in his power of removal.

As further evidence of the fact that the legislative session of 1921 did not deal with the words "for cause" with the understanding that they implied a notice and hearing, let us examine some of the other Acts passed by the same assembly.

Notice and a hearing were specifically provided for in section 29 of Chapter 216, Laws of 1921, which gave power of removal of certain designated officers for cause, viz., for official misconduct, inefficiency, incompetency or neglect of duty. If the words "for cause" already meant after notice and hearing, why make special provision for notice and hearing?

The same assembly also made special provision for notice and hearing before a police officer could be removed "for cause," such as being "incompetent or by age or disease, or otherwise has become incapacitated to discharge his duties." (Chap. 198, Laws of 1921.) These officers held during good behavior or until incapacitated. Again, why specifically provide for notice and hearing if they are implied when there is to be a removal for cause?

Also, the same assembly made provision for a hearing to remove from office drainage commissioners "for neglect of duty or malfeasance in office or for other good cause." (Sec. 92, Chap. 129, Laws of 1921.) These officers hold for a fixed term. (Sec. 18, Id.) Why specifically provide for a hearing if the words "for cause" imply one?

By Chapter 108, Laws of 1921, the Board of Examiners was given power "to discontinue in any or all state offices or to discharge any of said assistants, clerks or stenographers, for cause or otherwise, whenever in their judgment the best interests of the service requires such action." Was it incumbent upon that board, if it discharged an assistant "for cause," to first give notice and conduct a hearing, but if the discharge was without cause though for the best interests of the service, no notice or hearing was necessary?

Thus it will be seen that the authority and procedure for removals are intentionally varied. In some cases notice and hearing are essential, in others not; and this is true whether the tenure is for a fixed term or otherwise. These references to other legislative enactments of 1921, I believe, demonstrate that there was no thought on the part of that assembly that an officer could not be removed for cause without first giving notice and holding a hearing, except in those cases where notice and hearing were specifically provided for.

The history of the fish and game legislation does not support the contention that notice and hearing are required by section 3651, supra, as my associates have held. It shows a plain intent that notice and hearing are unnecessary. Chapter 176, Laws of 1907, Chapter 18, Laws of 1911, and Chapter 173, Laws of 1917, made no provision for the removal of members of the Fish and Game Commission. They were not, during the time those laws were in effect, subject to removal by the Governor at all. They were, however, subject to removal for misconduct or malfeasance in office (sec. 11687, Rev. Codes 1921), and were entitled to notice and hearing (secs. 11688 et seq.) because the statute specifically so provided. They were also subject to removal for collecting illegal fees or neglecting to perform their official duties (sec. 11702), and were entitled to notice and an opportunity to be heard, because the statute specifically so provided. (Sec. 11702.) By taking the Fish and Game Commission without the provisions of sections 11688 and 11702, which specifically provided for notice and hearing, and making provision for their removal by the Governor without making special provision for notice and hearing, the legislature manifested a clear intent that no notice or hearing was necessary.

What was said in *Wilcox* v. *People*, 90 Ill. 186, is here pertinent. The court there said: "It being found that the power of removal existed in the Governor, the inquiry remains whether it was validly exercised. Relators said not—that the power granted was judicial in its nature, and should have been exercised according to judicial methods, that is, there should have been a specific charge, notice of it, opportunity for de-

fense and hearing, and proof to support the charge. Undoubtedly, the Governor can only remove for some one of the causes specified; but the removal here was for one of these causes—incompetency. The Governor ascertained the existence of the cause here, and made the removal on account of it. The Constitution is silent as to who shall ascertain the cause of removal or the mode of its ascertainment. It simply gives to the Governor the power to remove any officer whom he may appoint, in case of incompetency, etc. It follows, then, that it is the Governor who is to act in the matter to determine, himself, whether the cause of removal exists, from the best lights he can get, and no mode of inquiry being prescribed for him to pursue, it rests with him to adopt that method of inquiry and ascertainment as to the charge involved, which his best judgment may suggest as the proper one, acting under his official responsibility, and it is not for the courts to dictate to him in what manner he shall proceed in the performance of his duty, his action not being subject to their revision. The Constitution of this state not only declares that the powers of the government of the state shall be divided into three distinct departments, but has expressly prohibited the exercise of any of the powers properly belonging to one by either of the others.''

In *Bynum* v. *Strain*, 95 Okl. 45, 218 Pac. 883, the court had this to say: ''An appointee to such a position is selected by the chief executive for the purpose of aiding the executive in carrying out his sense of duties and responsibilites to the public and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the chief executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the chief executive, and, in the absence of express authority, the judiciary has nothing to do with the chief executive's judgment, conscience, sense of duty, or responsibilities.''

Where there is a discretion in the removing power, as here, the power of removal may be exercised without notice or hear-

452

ing. (*Bailen* v. *Board of Assessors*, 241 Mass. 411, 135 N. E. 877; *Bryan* v. *Landis*, 106 Fla. 19, 142 So. 650; *Smith* v. *Mayor and Board of Aldermen*, (R. I.) 127 Atl. 562.) In the *Smith Case* the statute gave the power of removal to the mayor "for such cause as he shall deem sufficient and shall express in the order of removal." It was held that no notice or hearing was necessary, the court saying: "The power of removal is for such cause as the mayor shall deem sufficient; it is the judgment of the mayor in regard to the sufficiency of the cause, not of the court, which is decisive. He can act on knowledge obtained by his own observation and investigation, and he is not restricted in the method by which he makes a decision, which is personal. To remove a public officer without a hearing may or may not be a wise or fair procedure; but the determination of such considerations is for the legislature, not the courts. So far as appears, the mayor and board of aldermen acted in good faith. If the removals are improper or unjust, the appeal therefrom is to the voters of the city." To the same general effect are: *Hertel* v. *Boismenue*, 229 Ill. 474, 82 N. E. 298; *Ayers* v. *Hatch*, 175 Mass. 489, 56 N. E. 612; *State* v. *Burke*, 8 Wash. 412, 36 Pac. 281; *State* v. *Crandall*, 269 Mo. 44, 190 S. W. 889; *State ex rel. Hamilton* v. *Grant*, 14 Wyo. 41, 81 Pac. 795, 82 Pac. 2, 116 Am. St. Rep. 982, 1 L. R. A. (n. s.) 588.

But assuming, for the sake of argument, that when the removal is for cause notice must be given and a hearing had, that does not solve the problem here. Here the statute authorizes removal "for cause or for the good of the commission." My associates say that, since Baumgartner has alleged the reasons why the Governor acted, he has made the case one where the removal was for cause. One fallacy in this holding is in supposing that all of the reasons alleged by Baumgartner constitute "cause" as distinguished from "the good of the commission." Some of the reasons alleged do not constitute "cause" in a legal sense, but may, in the opinion of the Governor, require the removal "for the good of the commission." Thus in the answer of Baumgartner there appear allegations

to the effect that the Governor was prompted to remove the members of the commission for the good of the commission, because of discord and lack of harmony among the employees of that department which interfered with the harmonious and efficient conduct of the business of the office, and because of inefficient and unwise management and conduct of the affairs of the department, and because of a lack of sufficient interest in the affairs of the department. In consequence, it cannot be said that all of the grounds alleged in the answer of Baumgartner for making the order of removal, constitute "cause" within the meaning of the statute. Some of them are merely reasons which prompted removal "for the good of the commission." If any one ground stated is sufficient to warrant removal, it must be upheld. (*State ex rel. Hardie* v. *Coleman,* (Fla.) 155 So. 129, 92 A. L. R. 988.) Who is to determine whether removal is advisable for the good of the commission? Obviously, the Governor. This is clearly implied, and the power is as potent as if the statute so declared in terms; and no notice or hearing is necessary to establish the fact. (*Lacy* v. *Selectmen of Winchendon,* 240 Mass. 118, 133 N. E. 90.)

In the *Lacy Case* the officer there involved was removable "when the public interest requires." It was held that no notice or hearing was necessary. The court in that case had before it a statute which formerly read: "When in the judgment of the selectmen the best interests of the town so requires, said superintendent may be removed from his office by said board." Before the *Lacy Case* was decided, the statute was amended by omitting the words "in the judgment of the selectmen." The court simply held that the omission of these words made no difference. And so in our statute, I cannot see where it should make a particle of difference if the statute read: "when in the judgment of the Governor, the good of the commission so requires." He is the one who must make the determination. I think the *Lacy Case* is in point on this question, as are also *O'Dowd* v. *Boston,* 149 Mass. 443, 21 N. E. 949, *State* v. *Crandall,* supra, *State ex rel. Hamilton* v. *Grant,* supra, and *Ayers* v. *Hatch,* 175 Mass. 491, 56 N. E. 612.

454

The case of *State ex rel. Eckles* v. *Kansas City*, (Mo. App.) 257 S. W. 197, cited in the majority opinion, is not in point, for there the statute specifically provided that no person shall be removed "without first having received a written statement setting forth in detail the reasons therefor." This was not done. Likewise the case of *Pratt* v. *Board of Police*, 15 Utah, 1, 49 Pac. 747, cited and quoted from in the majority opinion, is not in point. There, section 17 of the statute under consideration made specific provision for a hearing after suspension, in order to make determination of whether the good of the service would be subserved by a removal. It was simply held that that statute was controlling.

My associates, I believe, concede that if the removal is made for the good of the commission no notice need be given or hearing had. It is repeatedly stated in the record before us that this was the reason for the removal.

The second fallacy in the holding, in the majority opinion, that the removal was "for cause" and not "for the good of the commission," is that such a holding flies in the teeth of the order of removal. That order specifically states that it was done "for the good of the commission."

It must be assumed by the judiciary that the chief executive of the state performed his duties honestly and lawfully. (46 C. J. 995, note 65.) It seems to me this court is going far afield when it assumes, as it does in effect, that the order was simply a subterfuge to evade notice and hearing, and more especially when as yet there has been no hearing and no evidence adduced on the point—the question having arisen on motion for judgment on the pleadings.

Much is said in the majority opinion relative to the purpose of the legislature to divorce the Fish and Game Commission from political activities. The question whether such was the purpose of the legislature is debatable, to say the least. The statute says nothing about this matter specifically. Had the legislature desired to remove the department from political activities, why did it not do as it did in submitting the constitutional amendment to section 15, Article XII of the Con-

stitution, found at page 760 of the 1921 Session Laws, dealing with the State Board of Equalization, wherein that same assembly specifically provided that "such members shall be so selected that the board will not be composed of more than two persons who are affiliated with the same political party or organization; providing further that each member * * * shall not * * * serve on or under any committee of any political party or organization, or take part, either directly or indirectly, in any political campaign in the interests of any political party or organization or candidate for office?"

It is true that the terms of the commissioners are so arranged that there will at all times in the usual course of events and providing there are no removals, be a majority of experienced members on the board. But the unusual sometimes occurs. It may occur as often by restricting the power of removal after notice and hearing, as without such restrictions. In other words, if the policy is to keep the department from political activities, that policy is no more interfered with in the one case than in the other. Notice and hearing have nothing to do with that policy.

In the majority opinion it is also stated that Sullivan's answer alleged that the sole ground of the Governor's action in removing him was the refusal of the commission to appoint a game warden of the Governor's selection. This was flatly denied by the reply filed by Baumgartner, and on motion for judgment on the pleadings this controversed issue cannot be taken as established.

I think the trial court erred in sustaining the motion for judgment on the pleadings.

Rehearing denied February 18, 1935.