HUGO P. FABRIZIO *vs.* CITY OF QUINCY & another.[1]

Norfolk.  January 16, 1980. — May 15, 1980.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*Municipal Corporations,* Officers and employees. *Practice, Civil,* Dismissal. *Public Officer. Libel and Slander.*

Under Rule 12 (b) (6) of the Massachusetts Rules of Civil Procedure, it is appropriate, although not required, to allow a motion to dismiss a complaint which sets out with clarity and precision the detailed factual allegations relied on if the allegations "clearly demonstrate that plaintiff does not have a claim." [734]

Removal by a mayor under G. L. c. 43, § 54, of an assessor, without a hearing, for the specific written reasons of "failure to properly assess," "improper assessments," and "[g]eneral inability to comprehend the governing statutes on assessments," was valid, since the reasons given, even if false, were reasons making removal lawful. [734-735]

Three newspaper articles, each on its face a news story, allegedly "caused to be published" by the mayor of a city in the two-day period following his removal of an assessor from office, were not defamatory; the articles merely reported the clashing views of public figures in political debate. [736]

CIVIL ACTION commenced in the Superior Court Department on October 10, 1978.

The case was heard by *Sullivan,* J., on a motion to dismiss.

*Kevin M. Keating* for the plaintiff.

*Laurence W. Cowley,* Assistant City Solicitor, for the defendants.

ARMSTRONG, J.  In February, 1977, the then mayor of Quincy appointed the plaintiff a member of the city's board of assessors to serve a three-year term.  In October a new mayor (who is named as a defendant in this action) removed

---

[1] The mayor of Quincy.

the plaintiff, filing a statement of reasons for the removal with the city clerk in accordance with the provisions of G. L. c. 43, § 54. The plaintiff brought this action to contest the validity of his removal and to recover damages for injury to his reputation. The defendants moved for dismissal of the complaint under Mass.R.Civ.P. 12 (b) (6), 365 Mass. 755 (1974), for failure to state a claim on which relief could be granted. That motion was allowed, and the plaintiff appealed from the ensuing judgment.

Dismissals on the basis of pleadings, before facts have been found, are discouraged; the standard applied under rule 12 (b) (6) is that "a complaint is sufficient unless it shows beyond doubt that there is no set of facts which the plaintiff could prove in support of his claim which would entitle him to relief." *White* v. *Spence*, 5 Mass. App. Ct. 679, 683 (1977), and case cited. Under that formulation the vague or ambiguous complaint tends to be immune from dismissal under rule 12 (see, e.g., *Balsavich* v. *Local 170, Intl. Brotherhood of Teamsters*, 371 Mass. 283, 287 [1976]; *Dioguardi* v. *Durning*, 139 F.2d 774 [2d Cir. 1944]); but where, as here, the complaint set out with clarity and precision the detailed factual allegations which the plaintiff contends entitle him to relief, it is appropriate, although not required, to allow a motion to dismiss if the allegations of the complaint "clearly demonstrate that plaintiff does not have a claim." 5 Wright & Miller, Federal Practice and Procedure § 1357, at 604, and cases cited in n.84 (1969).

The statute under which the mayor acted, G. L. c. 43, § 54, provides that the mayor "may remove the head of a department or member of a board by filing a written statement with the city clerk setting forth in detail the specific reasons therefor."[2] The specific reasons given in the statement were "failure to properly assess", "improper assessments resulting in a detriment" to the city, and "[g]eneral

---

[2] The statute goes on to provide that a copy of the statement is to be given the person thus removed, "who may make a written reply, which, if he desires, may be filed with the city clerk; but such reply shall not affect the action taken unless the mayor so determines."

inability to comprehend the governing statutes on assessments."

The complaint alleges that those reasons were "false and specious", and that allegation must be taken as true for the purpose of ruling on the motion to dismiss. *White* v. *Spence, supra* at 683. But the validity of a removal under § 54 does not depend on the truth of the reasons given. Section 54 is one of a number of statutes the purpose of which is "to qualify a removal at pleasure, by requiring a record to be made of the cause." *O'Dowd* v. *Boston*, 149 Mass. 443, 446 (1889). See *Ayers* v. *Hatch*, 175 Mass. 489, 491-492 (1900); *Murphy* v. *Mayor of Boston*, 220 Mass. 73, 74-76 (1914); *McKenna* v. *White*, 287 Mass. 495, 496-498 (1934); *Ray* v. *Mayor of Everett*, 328 Mass. 305, 309-310 (1952). Such a statute "allow[s] summary removals without hearing, with the condition that the cause of the removal should be put on record. This would naturally have an effect to prevent improper removals and, in case of a removal for cause for which it could not lawfully be made,[3] would make redress possible, giving to the person removed the same remedy he would have had if the removal had been for satisfactory cause found after a hearing . . . . With or without a hearing, there is a record of the cause of removal, and the appeal in either case is to public opinion." *O'Dowd*, at 447. The statute was complied with here: a statement of reasons was prepared and sent and was filed with the clerk. The reasons given may have been false, but they are reasons for which removal may lawfully be made (see *Ayers* v. *Hatch, supra* at 492); and the plaintiff would not be entitled to restoration to his position if he should succeed in proving that the reasons were in fact untrue.

---

[3] The reference here is explained in *Ayers* v. *Hatch*, 175 Mass. 489, 492 (1900), and would include removals from office on a basis that infringes the officer's constitutionally protected interests, such as his interest in freedom of speech (*Perry* v. *Sindermann*, 408 U.S. 593, 596-598 [1972]), or by reason of race, religion or sex (G. L. c. 151B, § 4; *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 137 [1976]).

The statute did not require a hearing before termination, and, contrary to the plaintiff's argument, he was not entitled by due process to such a hearing. He had no "property interest" in the position of assessor, absent statutory tenure or "rules or mutually explicit understandings that support [a] claim of entitlement to the [position]." *Perry* v. *Sindermann*, 408 U.S. 593, 601 (1972). There was no violation of his "liberty" interest; the reasons given for his discharge did not "stigmatize" the plaintiff as that term was used in *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 573-574 (1972). The reasons were not of a type that might seriously damage his standing and associations in his community or that might have the effect of foreclosing his freedom to take advantage of other employment opportunities. See *Codd* v. *Velger*, 429 U.S. 624, 638 n.11 (1977) (Stevens, J., dissenting); *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 761 (1976); *Grant* v. *Police Commr. of Boston*, 7 Mass. App. Ct. 296, 298-299 (1979).

In addition to the claim for reinstatement the complaint set forth a claim for defamation damages. This claim was based on three newspaper articles, attached to the complaint, which the complaint alleged the mayor had "caused to be published." The articles appeared in two Quincy newspapers and one Boston newspaper during the two-day period following the plaintiff's discharge. Each article is on its face a news story, reporting the fact that the plaintiff was preparing to bring suit to contest his removal and reiterating the three reasons which had been given by the mayor for the removal; they reported the clashing views of the mayor, the plaintiff, and a city councillor and another former assessor, the latter two having supported the plaintiff and leveled countercharges at the mayor. All the participants were obviously public figures. There was nothing in the charges or countercharges which suggested criminality or moral turpitude but only the sort of spirited and hyperbolic language that generally, for better or worse, characterizes political debate on matters of public interest. No liability in defamation could be properly based on such utterances. See *National*

*Assn. of Govt. Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220, 226-233 (1979); *Borski* v. *Kochanowski*, 3 Mass. App. Ct. 269, 271-274 (1975).

No contention has been raised with respect to the form of the judgment.

*Judgment affirmed.*