Houston, J.
This action arises from the alleged failure to the defendant Granada Computer Services, Inc. (“Granada”) to make relocation reimbursement and other payments to the plaintiff James Scott (“Scott”), a former employee, as required by various written agreements. This matter is before this Court on the defendant’s motion to dismiss Count I, G.L.c. 149, §§148 and 150, Count III, Breach of Covenant of Good Faith, and Count IV, Wrongful Termination. For the reasons set forth below, the defendant Granada’s motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
The plaintiff Scott alleges the following facts, which this Court accepts as true for the purposes of this motion. Scott was hired by Granada’s United Kingdom operation in 1981. In or "about February 1993, Scott agreed to relocate to Granada’s California office in Menlo Park and accept the position of Vice-President, Assistant General Manager, U. S. Field Operations.
In connection with his relocation, Scott and Granada entered into a contract wherein Granada agreed to reimburse Scott for the commission and closing costs on the purchase of a new home in California up to $30,000.00. Granada also agreed to provide Scott with a cost differential allowance of $1000.00 per month during the first twelve months and $500.00 per month during the second twelve months of his employment. Granada expressly provided that these relocation and allowance reimbursements were to be net of federal, state and local income tax.
In or about early 1994, Granada consolidated it’s U.S. Operations and offered Scott continued employment with Granada at its Burlington, Massachusetts headquarters. In connection with this further relocation, Granada agreed to reimburse Scott for his relocation expenses. It also agreed to continue to provide $500.00 per month in additional allowance; and it agreed to pay the additional relocation reimbursement and the continued cost differential allowance, net of federal, state and local income tax. The purpose of the agreement, as understood by the parties, was to ensure that Scott would not incur costs associated with his relocation. In addition, Granada agreed to pay Scott a bonus compensation.
Following his tax preparation in March 1994, Scott made repeated requests for reimbursements for expenses incurred due to both relocations and for payment of any tax liability on the relocation and cost differential payments. Despite his requests, Granada failed to pay him the monies owed. When his requests remained unhonored, Scott stated that Granada must make the payments due or he would seek court relief.
After informing Granada of his demand that it honor its contractual obligations or he would seek court relief, Granada terminated plaintiffs employment without notice. After Scott retained counsel and initiated a Wage Payment Action under G.L.c. 149, §150, Granada attempted to pay monies due. Pursuant to G.L.c. 149, §150, Scott filed an administrative complaint with the Attorney General’s office on January 23, 1995, waited the mandatory ninety day waiting period and filed a complaint in court. The complaint alleges that the defendant violated G.L.c. 149, §§148 and 150 (Count I); breached its contract with Scott (Count II); breached its covenant of good faith and fair dealing (Count III); and, wrongfully terminated Scott (Count IV). Granada moves to dismiss Counts I, III and IV.
DISCUSSION
“Dismissals on the basis of pleadings, before facts have been found, are discouraged; the standard applied under rule 12(b)(6) is that ‘a complaint is sufficient unless it shows beyond doubt that there is no set of facts which the plaintiff could prove in support of his claim which would entitle him to relief.’ Under that formulation the vague or ambiguous complaint tends to be immune from dismissal under rule 12 . . . but where . . . the complaint sets out with clarity and precision the detailed factual allegations which the plaintiff contends entitle him to relief, it is appropriate, although not required, to allow a motion to dismiss if the allegations of the complaint ‘clearly demonstrate that plaintiff does not have a claim.’ ” Fabrizio v. Quincy, 9 Mass.App.Ct. 733, 734 (1980). Moreover, a complaint should not be dismissed because it asserts a new theory of liability because “it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader’s suppositions.” New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988).
*353 A. Count I, G.L.c. 149, §§148 & 150
The Massachusetts Payment of Wages Statute requires employers to pay their employees wages at least every other week, unless an eligible employee elects to be paid monthly. G.L.c. 149, §148.[1] Employees who are involuntarily discharged must be paid in full on the day of the discharge. Id. Although the statute provides that “wages” shall include holiday or vacation pay, it does not provide a specific definition for the term. Id. Violation of the Payment of Wages Statute subjects the employer to both criminal and civil sanctions. Id. In particular, an employee aggrieved by the violation of the statute has a private civil right of action for injunctive relief and damages, including treble damages for loss of wages and other benefits, attorneys fees, and litigation costs. G.L.c. 149, §150.[2]
In this case, the defendant employer bases its motion to dismiss on the grounds that the payments which it allegedly failed to make to the plaintiff employee are not “wages” under the Payment of Wages Statute. “[A] basic tenet of statutory construction is to give the words their plain meaning in light of the aim of the Legislature.” Commonwealth v. Vickey, 381 Mass. 762, 767 (1980); see also Shubshelowicz v. Fall River Gas Co., 412 Mass. 259, 262 (1992) (“The language of a statute is the best indication of legislative intent”). “Provisions of legislation addressing similar subject matter are to be construed together to make ‘an harmonious whole consistent with the legislative purpose’ . . . and to avoid rendering any part of the legislation meaningless.” Healey v. Commissioner of Public Welfare, 414 Mass. 18, 25-26 (1992).
The term “wages" is not defined in tire statute or in interpreting regulations. However, the Supreme Judicial Court recently defined “wages” in the context of the Equal Pay Act, which prohibits wage discrimination on the basis of gender for work of like or comparable character. G.L.c. 149, §105A.[3] Jancey v. School Committee of Everett, 421 Mass. 482, 490-93 (1995). Looking to various sources for guidance, the Supreme Judicial Court adopted a definition consistent with that provided by B.lack’s Law Dictionary (6th ed. 1990):
Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, tips, and any other similar advantage received from the individual’s employer or directly with respect to work for him . . . Term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to manner in which such compensation is computed.
Id. at 1579 (citations omitted). The Supreme Judicial Court therefore held that the term “wages” was not limited to periodic monetary pay, but rather extended to fringe benefits, including health insurance and other types of remuneration.
No Massachusetts appellate court has determined whether the broad definition of “wages” in Jancey applies with equal force to G.L.c. 149, §148, and if so, whether payments promised to induce an employee to relocate constitutes “remuneration ... for services rendered” as required by the Jancey definition of “wages.” These novel issues of law are sufficient to preclude dismissal. Moreover, even if this Court were to rule as a matter of law that payments relating to Scott’s employment did not constitute “wages” under §148, Scott has alleged other facts sufficient to preclude dismissal. In particular, Scott alleges in various parts of the Complaint that Granada has failed to pay him “bonus compensation” and “vacation pay,” without specifying further the nature of these promised payments. In the absence of further information, this Court cannot conclude beyond a doubt that there is no set of facts which would entitle Scott to relief under G.L.c. 149, §§148, 150.
Accordingly, the motion to dismiss Count I, G.L.c. 149, §§148 and 150 is DENIED.
B. Count III, Breach of Covenant of Good Faith
The general rule in Massachusetts is that the employment of an at-will employee “is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.” Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992). One exception to this general rule exists where the termination breaches the covenant of good faith and fair dealing implied in the employment contract. Fortune v. National Cash Register Co., 373 Mass. 96 (1977).
In Fortune, the Supreme Judicial Court held that there adheres in every at-will employment relationship a “covenant of good faith and fair dealing” that is violated when the employer terminates an at-will employee in order to avoid payment to the employee of compensation earned or “almost earned.” Id. at 105. This doctrine is limited to circumstances where the employer would be unjustly enriched as a result of the employee’s termination. Gram v. Liberty Mutual Ins. Co., 391 Mass. 333, 335 (1984). “That the plaintiff was fired arbitrarily and was injured in her expectations of future wages or other future emoluments does not, without more, encompass the Fortune-type of liability, however meretricious we may consider the dismissal to have been.” Tendios v. Wm. Filene's Sons Co, Inc., 20 Mass.App.Ct. 252, 254 (1985).
In this case, Scott claims that his termination was aimed at relieving Granada of its contractual obligations to pay him bonus compensation, vacation pay, relocation expenses and grossed up tax liability. According to the Complaint, however, these obligations arose from written agreements between the parties. Nothing in the Complaint suggests that these agreements would allow Granada to escape its liabilities in the event of his termination. Since Granada remains liable under contract for the payments regardless of *354 Scott’s employment status, there exists no basis for determining that Granada was unjustly enriched by his termination. Contrast Fortune, supra (plaintiffs termination allowed employer to avoid paying commissions on goods sold before the termination but not yet delivered).
Accordingly, the Granada’s motion to dismiss Count III, Breach of the Covenant of Good Faith and Fair Dealing, is ALLOWED.
C. Count IV, Wrongful Termination
“As an exception to the general rule that an employer may terminate an at-will employee at any time with or without cause, [the Supreme Judicial Court has] recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy.” King v. Driscoll, 418 Mass. 576, 582 (1994). The Supreme J udicial Court “consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would ‘convert the general rule... into a rule that requires just cause to terminate an at-will employee.’ ” Id. (and cases cited therein). In this case, Scott claims that he was terminated for seeking redress in court to assert his contractual right to the payments under the written agreements, or, alternatively, his statutory right to timely payment of wages under G.L.c. 149, §§148 and 150.
“(T]he internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause.” Id. at 583. Granada argues, and this Court agrees, that the dispute in this case over the payments allegedly owed Scott under the written agreements is strictly an internal company matter. Scott’s claim that his termination was in retaliation to his exercise of his right to litigate does not, by itself, change this conclusion. “The mere fact that a dissatisfied [employee] shareholder could litigate the matter in a court of the Commonwealth does not transform this into an external matter involving, as the plaintiff argues, public policy.” Id. Thus, accepting as true Scott’s claim that his termination was in retaliation for seeking redress in court of his rights under the written agreements, such termination did not violate public policy.
Alternatively, liability under the public policy exception may be found “when the Legislature has expressed a policy position concerning the rights of employees and an employer discharges an at-will employee in violation of that established policy, unless no common law rule is needed because the legislature has also prescribed a statutory remedy.” Mello v. Stop & Shop Cos., 402 Mass. 555, 557 (1988); see also King, supra at 584 n.7 (where “a statute itself. . . provides] that an employer may not terminate an employee for exercising rights conferred by the statute . . . the common law public policy exception is not called in to play”) In this case, Scott argues that he was terminated in retaliation for exercising his right under G.L.c. 149, §150 to bring suit against Granada for failure to make timely payment of wages as required by G.L.c. 149, §148. General Laws c. 149, §148A, however, provides: “No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter.” Since §148A already prohibits retaliation against an employee for asserting his rights under c. 149, Scott’s exercise of his rights under §§149 and 150 cannot form the basis of his wrongful termination claim.
Accordingly, Granada’s motion to dismiss Count IV, Wrongful Termination, is ALLOWED.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant Granada Computer Services, Inc.’s motion to dismiss (1) Count I, G.L.c. 149, §§149 and 150 is DENIED; (2) Count III, Breach of Covenant of Good Faith, is ALLOWED; and (3) Count IV, Wrongful Termination, is ALLOWED.

General Laws c. 149, §148, provides, in relevant part: “Every person having employees in his service shall pay weekly or biweekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week... but.. . any employee discharged from such employment shall be paid in full on the day of his discharge . . . The word ‘wages’ shall include any holiday or vacation payments due an employee under an oral or written agreement.
“Whoever violates this section shall be punished by a fine of not less than five hundred nor more that three thousand dollars or by imprisonment in a house of correction for not more than two months, or both.”

General Laws c. 149, §150, as added by St. 1993, c. 110, §182, provides, in relevant part: “Any person claiming to be aggrieved by a violation of section one hundred and forty-eight . . . may, at the expiration of ninety days after the filing of a complaint with the attorney general . . . institute and prosecute in his own name and on his own behalf... a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of the litigation and reasonable attorney fees."

General Laws c. 149, §105A provides, in relevant part: “No employer shall discriminate in any way in the payment of wages as between the sexes, or pay any person in his employ salary or wage rates less than the rates paid to employees of the opposite sex for work of like or comparable character.”