STATE EX REL. HOWARD, RELATOR, *v.* IRELAND, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, RESPONDENT.

(No. 8409.)

(Submitted February 1, 1943. Decided May 29, 1943.)

[138 Pac. (2d) 569.]

490

*Messrs. Rockwood Brown* and *Horace S. Davis,* for Relator, submitted a brief; *Mr. Davis* argued the cause orally.

*Mr. R. V. Bottomly,* Attorney General; *Mr. Fred Lay,* First Assistant Attorney General; *Alfred F. Dougherty,* Assistant Attorney General, and *E. P. Conwell,* County Attorney of Carbon County, for Respondent, submitted a brief; *Mr. Lay* and *Mr. Dougherty* argued the cause orally.

*Mr. H. A. Simmons* and *Mr. Hubert A. Simmons, Jr., amici curiae,* submitted a brief, the latter arguing the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding for review of the action of the state superintendent of public instruction in reversing an order of a county superintendent of schools in proceedings for the removal of a district superintendent of schools.

As shown by the affidavit of the relator in his application for the writ, and the return thereto of the respondent, the state superintendent, to whom the writ is directed, the case presented for review is as follows:

The relator, L. C. Howard, was superintendent of schools of District No. 34 in the town of Belfry, Carbon county, Montana, having been appointed by the board of trustees on February 19, 1936, and with contract commencing on July 1, 1936, which was thereafter renewed from time to time by virtue of the law in respect to renewals, and by action of the board. On January 31, 1942, the board reappointed him for the ensuing school year, July 1, 1942, to June 30, 1943.

On April 15, 1942 the board of trustees voted to dismiss the relator from his position as superintendent, for cause, the dismissal to be effective on June 30, 1942. The question here is whether the board of trustees, in so dismissing the relator, had the matter properly before them so as to be vested with jurisdiction to act.

The contention of the relator is that, while the board of trustees had the power of removal, before the exercise of such power charges must be preferred and a hearing had thereon; that no charges having been made and no hearing had, the board was without jurisdiction to act, and the order of removal is therefore null and void.

The respondent contends that such dismissal, where cause exists therefor, may be made by the board without charges first preferred and without hearing thereon at which the person accused may appear and defend against the charges. It is also contended that, although not required by law, there was in fact a hearing before the trustees at a meeting on April 3rd. It is pointed out that no such hearing is provided for by statute. The contention is that the statutory hearing on ap-

peal to the county superintendent serves the purpose. Such hearing there was before the county superintendent with full inquiry then into the facts, resulting in a decision favorable to the relator. Upon appeal by the trustees to the state superintendent, on the full record of what was done by the board of trustees and on the record of the case as made before the county superintendent, the decision of the county superintendent was reversed and the action of the board of trustees in dismissing the relator was sustained. It is contended on the whole, that the procedure followed and the acts done by the various school officers, all was such as provided by law and in full compliance with the law; that the officers, in each of the successive steps in the matter, acted within their jurisdiction and with jurisdiction of the case vested in them; that thereby the relator was given and had a hearing, fully meeting the requirement of the law.

The proceedings by the board of trustees leading up to and including the act of dismissal, as shown by respondent's return, is as follows: On March 31, 1942, the school trustees sent out an invitation to the general public of the district to meet with the board and the superintendent to discuss matters of interest to them pertaining to the school.

In response to the invitation, a number of people came—parents and taxpayers. The school trustees and school clerk were there. So also was Mr. Howard, the school superintendent. The meeting was held in the school gymnasium on the evening of April 3, 1942, as specified in the notice of invitation. There is full record of the meeting in the trustee's minute book. Mr. Bunney, chairman of the board, in opening the meeting said that, "This meeting is to be in the nature of an open forum. It is for the purpose of giving every citizen of this school district an opportunity to offer to the Board any suggestions which may be for the good of our school or to register any complaints or any compliments regarding the school curriculum, the studies your children are required to take, the carrying on of the school work, or of the faculty. In

other words, while the School Board has called this meeting, it is your meeting."

Several of those in attendance, other than the school officers, spoke. Some of them questioned Mr. Howard about cases of difficulties with pupils and troubles over discipline in the schools. Reference was made by one to a student petition calling for Mr. Howard's resignation and another speaker suggested there be a change. One asked Mr. Howard if, under the difficulties existing, he thought he could conduct the schools in the future. The report says Mr. Howard was at various times called to the floor by different speakers to answer questions; that he was very evasive and on the vital points would not make direct reply; and that he said he intended to serve out his contract.

Aside from this report of the meeting, the minute book shows in connection therewith the receipt of a few letters by the board from parents criticising Mr. Howard and his conduct of the schools. There was no action taken on any matter at this meeting and no official business transacted by the school trustees.

Next we find in the minute book the record of a meeting of the school board held on April 15th. It is shown therein that Mr. Bunney reported that he had consulted with an attorney and that the latter was present at the meeting and read a brief prepared by himself on the case. The minutes show further that "the attorney at the request of the board compiled their suggestions in a rough draft of notice to Mr. Howard and agreed to put it into the proper language and send it to the board before the next meeting." The minutes then show a motion unanimously carried dismissing Mr. Howard, for cause, as of the end of the school year, his salary to end June 30, 1942. It was ordered that a notice of dismissal be prepared and served on Mr. Howard, setting forth as grounds of the dismissal his unfitness, incompetence and violation of rules, with numerous specifications thereof.

Next in the minute book we find notation under date of

April 24th of the calling of a special meeting of the trustees for April 28th, which says that, "The purpose of the meeting is to further consider our school budget, and also in accordance with the resolution passed at the Trustees' meeting April 15th, to give further consideration to the situation with respect to our school principal and take such further action as the Board may decide is desirable."

Following this we find record of a special meeting held on April 28th, which shows that the notice of dismissal as prepared by the attorney was then signed by the members of the board and served personally on Mr. Howard at the meeting.

The foregoing is all that is shown to have been done by the board of trustees about the dismissal. We see therefrom that there was dissatisfaction with Mr. Howard and open public criticism of his work as school superintendent. This was brought to the attention of the trustees and, because thereof and because of certain grounds regarded by the board as good cause, he was removed from his position. There were no charges preferred against him and there was no hearing upon the matter held by the board, before the removal was made.

The meeting of April 3rd is relied on as a hearing, contention being made that the criticism of Mr. Howard and the dissatisfaction with his administration of the schools as there voiced in open meeting constituted charges preferred and, with Mr. Howard being present and taking part in the discussion, that constituted a hearing of the matter. The board's own record of the meeting shows clearly that what took place cannot be given such character. The call sent out, the statement by the chairman of the board in opening the meeting, surely establish its character as just an open assembly and public discussion of school troubles. It was a public assembly brought together by the school trustees, apparently for the special purpose of sounding out sentiment for the removal of Mr. Howard. It was conducted as an open forum at which some of those present expressed their views upon the matter about which the school board apparently had felt

concerned. The meeting was of no legal effect any more than would be a discussion at any incidental meeting of the people of the district anywhere, at which the trustees were present. It may have been a practical way of sounding out public sentiment, but it served no other purpose.

At a hearing, if such is required, there would need to be ▮ charges preferred so that the subject of inquiry be known, and adequate notice to give the accused opportunity to prepare for and attend the meeting to refute the charges made. At such hearing, evidence should be taken; witnesses should be interrogated, with opportunity for cross examination; all to the purpose of determining in a manner judicial the truth or falsity of the charges made. (*Grant* v. *Michaels*, 94 Mont. 452, 461, 23 Pac. (2d) 266.) At the meeting as held, none of these several elements of a hearing were present. And no other showing of a hearing before the board is found in the record. There was no hearing before the order of removal was made. We come then to the question whether a hearing was required.

The relator was appointed under section 1262.39, Revised ▮ Codes. This section provides that the board of trustees of any district may appoint a superintendent of schools whose contract shall be deemed renewed thereafter for successive one-year terms. It also provides that the board may terminate the contract at the end of his term in any year by giving written advance notice thereof on or before February 1st. The statute is silent as to any authority of the board to remove him except that in event he ceases to hold the proper teachers' certificate he shall thereupon be forthwith discharged by the board of trustees.

The provision of section 1015, Revised Codes, empowering the board of trustees to "employ or discharge teachers, mechanics, or laborers," does not apply. The superintendent is not therein included. He is appointed under a separate and different statute, enacted first in 1931 and which provides specially for that office. He occupies a different position and performs a different function in the school system from that of a

496

teacher. He has general supervision of the schools of the district and is the "executive officer of the board of trustees." He is a public officer (*State ex rel. Hill* v. *Sinclair*, 103 Kan. 480, 175 Pac. 41; *Board of Education* v. *McChesney*, 235 Ky. 692, 32 S. W. 26.) He is given permanency of tenure immediately upon his appointment, under his contract which, by the statute, is automatically renewed from year to year and which may be terminated only upon certain notice.

While continuity of service is provided for as a policy, not only in fairness to the appointee but for the good of the schools, it is also necessary for the good of the schools that one holding the position who proves to be unfit should not be continued in the service. For that reason, his contract may be terminated upon notice at the end of any one-year term. Also, for the same reason, the trustees should have the power of removal during the term when cause exists therefor.

The general rule that the power of appointment carries with it the power of removal places the power here in the board of trustees. Not only does the superintendent receive his appointment from the board, but he performs the functions of his office under their direction. It is for the board to judge of his fitness in the first instance and it is on their judgment that he is permitted to continue in the office under the renewal provision of the statute. If he be guilty of acts of negligence or wrong in the performance of his duties, it must be for the board to determine whether he should serve out the term. The maintenance of good schools is the work and function of the board, with which they are entrusted. The selection of good personnel on the teaching and supervising staff is a most important part of that function. Without the power of removal of any so selected, when cause exists therefor, the board would be seriously handicapped in the performance of its trust. While not specially provided for by statute, the power of removal is necessarily implied. It should not be exercised arbitrarily. In justice and fairness to the appointee, his rights should be given consideration. There should not be an abrupt

termination of his service during the term without inquiry first to determine whether cause exists. Such determination cannot be fairly made by the board except upon hearing had.

There is no provision by statute for such hearing; however, we have in this state a well-defined policy requiring hearing in such cases. The decisions of this court have so declared. First in *Kellison* v. *School District,* 20 Mont. 153, 50 Pac. 421, dealing with the dismissal of a teacher, the policy was declared as dictated by common justice, which means that without a hearing justice would not be done. In order to make clear that a hearing was had, of legal character and such as gave the board jurisdiction to make an order of dismissal, the court carefully enumerates the various steps in the proceeding, the manner in which the hearing was conducted, and the arrival at a decision thereon by the board. This all was regarded by the court as necessarily found to have occurred in order to give the basis of the conclusion that there had been a legal dismissal of the teacher.

Since then, whenever the question again has come before this court, the same rule as declared in the *Kellison Case* has been adhered to. The requirement of hearing before the dismissal from service of one in public office or public position for a fixed term of tenure has been declared as fundamental policy in this state and as required by law. It has become so well established that only an act of legislation would warrant any deviation from the rule. (*State ex rel. Rankin* v. *Madison State Bank,* 68 Mont. 342, 349, 218 Pac. 652; 21 C. J. S., Courts, sec. 186, p. 298; *Moore* v. *Chalmers-Galloway Live Stock Co.,* 90 Colo. 548, 10 Pac. (2d) 950.)

As record of its more recent application and enforcement by this court, we refer to *State ex rel. Nagle* v. *Sullivan,* 98 Mont. 425, 40 Pac. (2d) 995, 99 A. L. R. 321, and *State ex rel. Holt* v. *District Court,* 103 Mont. 438, 63 Pac. (2d) 1026.) While the controversy therein did not relate to appointments made by school trustees, the principle involved is the same. In the

*Sullivan Case* [98 Mont. 425, 40 Pac. (2d) 996], the relator was a member of the State Fish and Game Commission and there had been attempt at his removal summarily without notice and hearing. Under an appointing statute which authorized removal, ''for cause or for the good of the commission'', the court, holding that notice and hearing of charges must precede such dismissal, says ''This phrase 'for cause', as used in this connection, means for reasons which the law and sound public policy recognize as sufficient warrant for removal * * *, that is 'legal cause' * * *, and not merely a cause which the appointing power, in the exercise of discretion, may deem sufficient * * *. It follows, inevitably, that when a statute provides for an appointment for a definite term of office, without provision otherwise, or provides for removal 'for cause', without qualification, removal may be effected only after notice has been given to the officer of the charges made against him and he has been given an opportunity to be heard in his defense. * * * The rigorous application of the rule can only be evaded in such cases by an express grant of power to remove at will.''

In the later case, *State ex rel Holt* v. *District Court,* supra, involving proceedings for the removal of members of the state highway commission, the court declares, as a public policy of the state, that in summary proceedings for the removal of an officer appointed for a fixed term the accused is entitled to full hearing in his defense. The *Sullivan Case* is referred to and quoted from at length, the court saying that ''it will be observed from the foregoing quotation that it is necessary in the removal proceeding of this character for notice to be given and hearing had after such notice.''

The rule in Montana is in accord with the general rule prevailing in most jurisdictions. (46 C. J. 989, sec. 160; *State ex rel, Hill* v. *Sinclair*, 103 Kan. 480, 175 Pac. 41.) For statement of the rule as applied to teachers, see 56 C. J. 405, sec. 343; and the following court decisions: *Public School District* v. *Holson,* 31 Ariz. 291, 252 Pac. 509; *Baird* v. *School District,* 41 Wyo. 451,

287 Pac. 308; *School District* v. *Parker,* 82 Colo. 385, 260 Pac. 521; *Finch* v. *School District,* 225 Mich. 674, 196 N. W. 532; *People ex rel. Callahan* v. *Board of Education,* 174 N. Y. 169, 66 N. E. 674.)

Respondents cite the case of *Kelsey* v. *School District,* 84 Mont. 453, 276 Pac. 26, 27, as holding that a hearing before the board is not required. In that case, a teacher was dismissed and appeal taken to the county superintendent. The county superintendent sustained the action of the trustees. There was no appeal to the state superintendent. Without proceeding further, the teacher sued the district to recover damages for breach of her contract of employment. The court held that the question of sufficient grounds for dismissal was matter for determination by the school trustees and says that "so long as the school officers act legally and within the power expressly conferred upon them the courts will not interfere"; that it is only where there has been "a clear abuse of that discretion, or arbitrary or unlawful action" that the court will assume to act. Whether there was a hearing before the board is not discussed. It may be inferred from certain language in brief of counsel as shown in the reporter's notes that there was no hearing. However, no point is made thereon in the court's opinion. It is in no way referred to. The emphasis is on the fact that the teacher had not exhausted her remedy by appeal to the higher school officers. Summarizing as to what is the basis of the decision, the court says in conclusion: "The upshot, then, is, first, that the plaintiff had a plain, speedy, and adequate remedy by appeal to the school officers, in whom the law reposes, by reason of their special fitness to decide, the duty of settling the controversy, which remedy the plaintiff did not exhaust; second, no reason is shown why the court should be called upon to interpose its power."

With no reference to the *Kellison Case* and no discussion of the rule therein established, nor even of the question involved, the *Kelsey Case* cannot be considered as of sufficient

strength to change the rule. It would only be by implication that it could be given that effect. Without some clear and pointed declaration of policy, an opinion in a case falls short of establishing a rule to be followed as *stare decisis*, even in the absence of any earlier established rule. Much less may it be given controlling effect as against a rule previously well established. (21 C. J. S., Courts, sec. 186, p. 299; *New Amsterdam Casualty Co.* v. *National Union Fire Ins. Co.*, 266 N. Y. 254, 194 N. E. 745, 99 A. L. R. 216; *United States* v. *Burr*, Fed. Cas. No. 14,693, 4 Cranch 470, 481 Append.) With the more recent pronouncement in *State ex rel. Nagle* v. *Sullivan* and again in *State ex rel. Holt*, we are confirmed in our view that the rule in *Kellison* v. *School District* should be followed in this case.

A hearing in advance of removal being required, and none such having been had, the order of dismissal made by the board of trustees was null and void.

It is strongly urged by respondent that the hearing had on ▇▇ appeal to the county superintendent satisfies the requirement of the policy of the law. That is not the hearing which the law requires as prerequisite to removal. It is the board of trustees that is vested with the power to remove, not the county superintendent. It was before them that the relator was entitled to a hearing of charges and to defend against them. The purpose of such hearing is to avoid the harm that may come from a dismissal where no good cause exists. It is clear that the hearing on appeal cannot serve that purpose. There must be hearing before the board of trustees to vest them with jurisdiction to act. The appeal to the county superintendent is to give opportunity for review of the action of the board, not to provide for the basic requirement of hearing before any removal is made.

Counsel in their brief as well as in oral argument have dealt ▇▇ with the appeal to the county superintendent as if provided for by section 1085, Revised Codes. That section relates to cases of dismissal of teachers. The relator, as we have

.already shown, occupied a wholly different position from that of a teacher. Section 1085, Revised Codes, providing specially for appeal in the dismissal of a teacher, does not apply. The appeal in the case of a district superintendent is under section 966, Revised Codes, providing generally for appeal to the county superintendent from decisions of school officers and boards.

The relator was entitled to a hearing before the board of trustees as a matter of right. There having been no such hearing, the order of removal made by the board of trustees was void for want of jurisdiction. The proceedings on appeal could have no validating effect thereon and the order made by the state superintendent, approving the action of the board of trustees, is likewise null and void for want of jurisdiction.

A peremptory writ will issue.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and ADAIR concur.

MR. JUSTICE MORRIS:

I concur in the result of the foregoing opinion with some reluctance. Public schools are established and maintained primarily for the benefit of the pupils and the evidence adduced at the hearing before the county superintendent clearly establishes the fact that Mr. Howard's usefulness as a teacher in the Belfry schools has been effectually destroyed. The testimony by a pupil that ninety per cent. of the high school students desired his dismissal was not materially discredited.

But before a teacher may be discharged for cause, he must be advised of the charges he will have to answer, reasonable notice of the time and place where a hearing will be had and likewise reasonable time in which to prepare his defense. If these things are done and good cause is shown at the hearing justifying such action by the board, the teacher may be discharged irrespective of the time his contract has to run. The case of *Kellison* v. *School Board*, 20 Mont. 153, 50 Pac. 421, is directly in point here and is grounded on sound reasoning.