384

STATE OF MONTANA ex rel. GEORGE W. HOLLI-
BAUGH, Plaintiff and Appellant v. STATE FISH AND
GAME COMMISSION of the State of Montana; RALPH
D. SHIPLEY, H. W. BLACK, JOHN T. HANSON, SR.,
WILLIAM T. SWEET and E. J. SKIBBY, as Members of
and constituting the State Fish and Game Commission of
the State of Montana; W. J. EVERIN, as State Fish and
Game Director, of the State of Montana; and Gene H.
Sherman, as District Supervisor for the State Fish and
Game Commission of the State of Montana, Defendants
and Respondents.

No. 10179.
Submitted June 7, 1961. Decided September 14, 1961.
365 P.2d 942.

Seth F. Bohart and Keister & Bennett for appellant. Lyman H. Bennett and Seth F. Bohart argued orally for appellant.

Lloyd J. Skedd (argued orally), Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from the district court for Gallatin County which had dismissed relator's petition for a writ of mandate to restore him to the position of State Fish and Game Warden of the State of Montana.

At the time this controversy arose, relator, appellant here, was a State Fish and Game Warden stationed in Bozeman. After the regular 1958 deer hunting season had been closed, the Fish and Game Commission, hereinafter referred to as the Commission, opened a special area near Bozeman. Relator patrolled the special open area as part of his duties as a Warden. On December 27, 1958, the relator shot a deer near the boundary of the special open area. After a great deal of investigation and controversy, the district supervisor for the Commission determined that the relator had shot the deer in an area closed to deer hunting. On January 3, 1959, relator was taken before a justice court in Gallatin County by the district supervisor, where he entered a plea of guilty to the charge of hunting and taking a deer in a closed area, was fined and paid the fine.

Relator was brought to Helena on January 10, 1959, where

he met with the State Fish and Game Director, hereinafter referred to as the Director, regarding the game violation and his position with the department. Thereafter, relator was advised in a letter from the Director that he would be discharged effective March 31, 1959, and that he could resign effective that date or request a statement of charges and a hearing before the Commission. Relator demanded specification of charges against him and a formal hearing before the Commission. Specifications of charges were furnished by the Director, which read:

"George Hollibaugh, State Fish and Game Warden, is to be discharged March 31, 1959, by virtue of the following charges:

"1. Incompetency and inability to perform the duties of a Fish and Game Warden specifically as follows:

"a. Lowest Accomplishment Record on District Three and unsatisfactory efficiency report for October, November and December, 1958.

"b. Evasive and incredible explanation of incidents concerning deer violation listed below.

"2. Violation of Fish and Game Regulation:

"a. Hunting and taking a deer in a closed area on December 27, 1958, south of Limestone Canyon drainage in Gallatin County, Montana.

"W. J. Everin
"State Fish and Game Director"

Thereafter, on February 25, 1959, the relator filed a motion in the justice court in Gallatin County to set aside the conviction of hunting and taking a deer in a closed area. The justice court set aside the conviction and allowed relator to withdraw the plea of guilty and to enter a plea of not guilty. The complaint against relator was thereafter dismissed on the motion of the county attorney for Gallatin County. The fine paid by relator was not remitted.

The Commission conducted a hearing of the charges against relator on March 17, 1959. Relator was represented by coun-

sel and was allowed to present evidence in his defense. After a full hearing the Commission affirmed the decision of the Director in discharging relator as a Fish and Game Warden.

Relator filed a petition for a writ of mandate in district court seeking to be reinstated as a Warden. The matter was tried and judgment was entered dismissing the petition.

At the hearing before the Commission, and again before the district court, the relator advanced several arguments in support of his contention that he had been unlawfully discharged. Relator urged that he did not commit a violation of Fish and Game regulations by killing a deer in a closed area. He intro-duced evidence indicating that the place where he shot the deer was within the boundary of the area open to hunting. In addition he contended that he could not be found to have committed a game violation by reason of the fact that the special area was not posted as required by statute, and the description of the area was incomplete and uncertain. Relator testified that he only entered a plea of guilty to the game violation because of the pressure asserted by the district supervisor and because he feared the loss of his job. Relator introduced a great deal of testimony in support of other contentions which we do not deem material.

The case against relator is revealed by the testimony of the Director at the hearing before the Commission. He testified on direct examination:

"Q. Are you the Fish and Game Director who signed the letter to George Hollibaugh indicating—his dismissal would be effective March 31, 1959? A. I was.

"Q. Would you explain to the Commission your purposes for making such a letter? A. After it was called to my attention that George Hollibaugh had been involved in a Fish and Game violation in the Bozeman area, I immediately requested the Chief of Enforcement and Deputy Director at the time to get out the records on George Hollibaugh and we would review them. I requested a report

on the entire incident, everything that took place leading up to the violation. I didn't go back in the records much further than last June 1 or July 1, or approximately that time when George was transferred from Miles City to Bozeman. * * * the records and reports * * * indicated to me that George Hollibaugh was originally transferred to Bozeman because he was not performing as a warden should perform. He was transferred and told at the time that he must do better work, he must improve, and that he was more or less under a trial period under a new Supervisor. He was verbally instructed to this extent. Whether you would call it a probationary period or not, he was still under a trial period to see if he could respond and do the work as required. I reviewed correspondence from his supervisor at Miles City after his transfer giving the reasons for his transfer. I reviewed correspondence from the Chief of Enforcement relative to his performance. I reviewed his performance record for October, November and December, and the performance record indicated to me that he was the lowest on the records for the district. That is, his efficiency report was the lowest for the district. It was below normal. I reviewed the case report showing that he was involved in a violation of the law and then I reviewed specifically a letter from his immediate supervisor wherein he submitted a recommendation and requested that he be transferred from his jurisdiction. I want to make it plain here that the reasons why I sent the letter on January 15 were not solely because George Hollibaugh was involved in a Fish and Game violation. The violation only *indicated* to me that he was incompetent for the reason that he did not know where the open area was—in this open area in Gallatin County; that his report showed that he had patrolled the area on three different occasions before the day he killed the deer on December 27 indicated to me that he did not take enough initiative

to contact people in the area to find out where Ross Creek or Limestone Canyon was. It indicated to me that he was patrolling an area without knowing where the boundary was, that it was a lot of wasted effort as far as he was concerned. Because of his past history, and he had been transferred a number of times, I did not deem it advisable to transfer him to another district in view of the fact that I could not find any district supervisor willing to take George on an assignment to his district. They were very reluctant to take him. Therefore, I wrote the letter informing him of his pending discharge on March 31.''

The ultimate question to be decided on this appeal is whether the relator was removed from his position as a Fish and Game Warden *for cause*. Section 26-108, R.C.M.1947, provides: ''The director shall have the power to suspend without pay, reduce in rank, or remove any employee at any time *for cause* * * *.'' Emphasis supplied.

The meaning of the phrase *for cause* has been before this court many times. The law is well-summarized in State ex rel. Nagle v. Sullivan, 98 Mont. 425, 439, 40 P.2d 995, 998, 99 A.L.R. 321, wherein this court set out the following often quoted language:

''This phrase 'for cause', as used in this connection, means for reasons which the law and sound public policy recognize as sufficient warrant for removal [Citing cases.] that is 'legal cause' [Citing case.], and not merely a cause which the appointing power, in the exercise of discretion, may deem sufficient. [Citing case.] It follows, inevitably, that when a statute provides for an appointment for a definite term of office, without provision otherwise, or provides for removal 'for cause', without qualification, removal may be effected only after notice has been given to the officer of the charges made against him and he has been given an opportunity to be heard in his defense. [Citing cases.] The rigorous application of the rule can only be

evaded in such cases by an express grant of power of removal at will.''

The first question raised by this appeal is whether relator was given the hearing to which he was entitled. There was no hearing prior to the time that the Director notified relator he would be discharged as of a later date. Relator received a hearing by demanding one before the Commission. This hearing relator characterizes as a hearing on appeal which could not cure the earlier defects. Relator relies on several Montana cases which have held that notice and hearing should be before and not after a summary dismissal. State ex rel. Nagle v. Sullivan, supra; State ex rel. Howard v. Ireland, 114 Mont. 488, 138 P.2d 569; State ex rel. Opheim v. Fish and Game Comm., 133 Mont. 362, 323 P.2d 1116.

The above cases can be reconciled with the case at bar on the basis of the difference in statutory language under which each of the cases arose. The Opheim case concerned the Fish and Game Department, but there the removal of an employee was by the Commission, not the Director, and the statute involved was not the same as the statute applicable in this case.

█ It has long been recognized in this state that removal of a public employee is within the control of the Legislature. In State ex rel. Nagle v. Sullivan, supra, 98 Mont. at page 437, 40 P.2d at page 997, this court stated:

''The American concept of a public office is that of a public trust or agency created for the benefit of the people, and in which the incumbent has not a property right, to be administered under legislative control in the interest of the people. [Citing cases.] Where an office is created by statute, it is wholly within the control of the legislature [Citing case.] * * *

''* * * in any case, the Legislature may, if it sees fit, provide for the removal of an incumbent without notice or hearing [Citing cases.], but the extent of the power and

the manner of its exercise is to be determined by the wording of the applicable statute.''

An office created by an act of the legislature is within the control of the legislature and ''is taken in full view of all the vicissitudes of legislative action, including removal for such cause as the legislative assembly may deem sufficient.'' State ex rel. Bullock v. District Court, 62 Mont. 600, 604, 205 P. 955, 957.

In State ex rel. Holt v. District Court, 103 Mont. 438, 63 P.2d 1026, we held that when the legislature has made a declaration of the public policy of this state as to the removal of public officers, this court cannot substitute its judgment for the declaration of the legislature.

In the cases relied upon by the relator the various statutes under which the discharging authority acted did not provide for a procedure as to notice and hearing. We have recognized that when the legislature does not outline a procedure for removal *for cause,* such procedure is to be prescribed by the public policy of the state. However, where the legislature has specifically outlined the procedure for removal, it has declared the public policy of the state and compliance with such procedure is all that is required.

The applicable statute in this case is section 26-108, R.C.M. 1947, which provides: ''The director shall have the power to suspend without pay, reduce in rank, or remove any employee at any time for cause, providing that any person who has been continuously employed for one (1) year or more immediately preceding any suspension or discharge may demand and receive a hearing on charges filed before the fish and game commission. The action of the commission resulting from such a hearing shall be final. * * *''

This statute clearly does not provide for a hearing before the Director. The legislative plan is to vest in the Director the power to remove summarily if a hearing is not demanded. The Director must necessarily allow the employee an oppor-

tunity to demand a hearing. The power to conduct a hearing and make the discharge final is vested in the Commission. The obvious purpose of this arrangement is to allow discharge by an officer who has close contact with the employee and yet allow review by the board which bears the final responsibility for the department. In view of the far-flung activities of the Fish and Game Commission such arrangement seems desirable and is eminently fair and reasonable.

The statutory plan was fully complied with in this case, and we conclude that relator received the notice and hearing to which he was entitled.

The next question presented by this appeal is whether the relator was discharged for reasons which the law and sound public policy recognize as sufficient warrant for removal.

Section 26-108, R.C.M.1947, vests the final determination of whether there are sufficient grounds for removal in the Commission. There is no provision for appeal to this court from the decision of the Commission. It is left for that board, within the reasonable exercise of its power, to determine what is in the best interests of the Fish and Game Department and the public.

We do not hold that the Commission has power to arbitrarily remove its employees. There must be reasons which the law and sound public policy recognize as sufficient warrant for removal. In other words, there must be facts to move the discretion of the Commission. This court will not interfere with the determination of the Commission unless it acts without facts to move its discretion and therefore in an arbitrary and capricious manner. State ex rel. Matson v. O'Hern, 104 Mont. 126, 65 P.2d 619; International Business Machine Corp. v. Lewis and Clark County, 111 Mont. 384, 112 P.2d 477.

In State ex rel. Matson v. O'Hern, supra, 104 Mont. at page 630, this court quoted with approval from Wilcox v. People ex rel. Lipe, 90 Ill 186, where it was stated:

" "* * * The court will only inquire whether the officer has acted within the power, and will not attempt to substitute its own judgment or discretion for that of the officer, and will not supply any other conditions to the exercise of their discretionary power than such as the law has provided. * * * In People v. Stout, 19 How. Prac. [N.Y.] 171, it was held: ''Where the right to remove a public officer is vested, by legislative or constitutional enactment, in a particular person or body *for cause,* or upon notice to the incumbent, and no right of appeal or review has been expressly given by law, this court has no power or authority to inquire into the discretion exercised by such person or body, or in any manner to review such removal.'' In State ex rel. Attorney General v. Doherty, 25 La. Ann. 119 [13 Am.Rep. 131], it was said, in . the opinion of the court: ''The grant of power to the executive to remove an officer for a certain cause, implies authority to judge of the existence of that cause. * * *'' * * * Any decision that may be found to the contrary is exceptional. The doctrine of the cases cited is the strongly prevailing authority upon the subject.' ''

Relator relied on the following language from the Sullivan case: ''This phrase 'for cause', as used in this connection, means for reasons which the law and sound public policy recognize as sufficient warrant for removal * * * that is 'legal cause' * * * and not merely a cause which the appointing power, in the exercise of discretion, may deem sufficient.'' This language, in a similar context, was construed in the O'Hern case. This court in the O'Hern case pointed out that ''The quoted language occurred in the course of a lengthy discussion, and related to, and was used in connection with, the claim that the Governor had a right to remove officials without notice and without hearing.'' This language does not mean that the discharging authority can not exercise its discretion in determining what is sufficient cause for removal.

It is axiomatic that when a board is given the final power to remove for cause, it has a discretion to exercise in determining if such cause exists.

We find that there are sufficient facts in the record to support the Commission's decision. We will not attempt to decide whether relator was guilty of a game violation, nor need we decide whether a plea of guilty can be withdrawn after judgment and sentence in a justice court. Conviction of a criminal offense is not a requisite to dismissal for cause. Conduct which could not be the basis of a criminal conviction may be a sufficient ground for dismissal from public employment.

A public office has been defined as "a public trust or agency created for the benefit of the people." State ex rel. Nagle v. Sullivan, supra. A public officer is bound by a very high standard of conduct. A law enforcement official has a higher responsibility than mere strict compliance with the letter of the law. When the people delegate to an officer the right to enforce a standard of conduct on themselves, they may reasonably expect him to carry out his duties with a high degree of intelligence and devotion to the law which he is entrusted to enforce.

Even if we assume that the relator was correct in his arguments to the effect that he did not commit a game violation, the Commission is not precluded from inquiry and action under the phrase *for cause*, as used in the statute. In a proceeding of this nature, relator cannot defend on the grounds that the special area open to hunting was improperly posted or that the boundaries were uncertain and incomplete. Technical defenses may protect the unwary from the rigors of criminal prosecution, but they can be of no aid to the relator.

Relator contends that he was treated unfairly in light of the treatment given others. He introduced evidence to the effect that another game warden had been found guilty of a game violation and was not discharged. This argument is without merit. Relator has no interest in the treatment of others. As

long as he received his full measure of justice he cannot complain that others have faired better.

We have studied the other arguments advanced by the relator and find that they are without merit. We find that the lower court made findings on all material issues presented by this cause.

We do not feel it is necessary to comment on all the evidence in support of the conclusion that relator was legally removed from his position as Fish and Game Warden. From a complete study of the record we find that the Fish and Game Commission did not act arbitrarily, capriciously or unlawfully. There are sufficient facts to establish that the Commission was legally justified in discharging the relator.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE and JOHN C. HARRISON concur.

MR. JUSTICE ADAIR concurring in result.

I concur in the result, but not in all that is said in the foregoing opinion.