The STATE OF MONTANA ex rel. JAMES A. FORD, Plaintiff and Relator and Appellant, v. The STATE. FISH AND GAME COMMISSION of the State of Montana et al., Defendants and Respondents.

No. 10985.
Submitted June 9, 1966. Decided September 22, 1966.
Rehearing denied October 18, 1966.
418 P.2d 300.

Floyd O. Small (argued), C. W. Leaphart, Jr. (argued), Robert Cummins, Helena, for appellant.

Robert A. Poore (argued), Butte, Forrest H. Anderson, Atty. Gen., Helena, for respondents.

HONORABLE FRANK I. HASWELL, District Judge, sitting in place of MR. JUSTICE CASTLES, delivered the Opinion of the Court.

This is an appeal by James A. Ford, relator below, from a judgment of the district court of Lewis and Clark County dismissing his petition for writ of mandate to compel the Montana Fish and Game Commission to reinstate him to his former employment as warden supervisor in the Montana Fish and Game Department.

At the time this controversy originally arose Ford (hereafter called relator) had been employed continuously by the Montana Fish and Game Department (hereafter called the Depart-

ment) in various law enforcement capacities since 1953; and at the time of his suspension on September 20, 1962, was employed by the Department as warden supervisor of the Bozeman district. This district consisted of an area in southern Montana abutting the State of Idaho. Relator was the chief resident law enforcement officer of the fish and game laws for the Department in his district.

The principal incident that led to relator's suspension was his conduct on a combined working-hunting trip in an area southwest of Hebgen Lake abutting Fremont County, Idaho, between September 13 and 17, 1962. The events that occurred on the morning of September 16 while relator and his companion were hunting Bighorn sheep in an area near the continental divide boundary line between Montana and Idaho are sharply in conflict. The basic dispute centers around whether relator shot his Bighorn ram in Montana or Idaho and whether he violated the Idaho game laws. Relator and his companion were licensed to hunt in Montana but were not licensed to hunt in Idaho.

In any event an Idaho game warden launched an investigation which came to the attention of the Montana Fish and Game Director (hereafter called the Director), who after hearing relator's version of the hunting incident, suspended him without pay and without duties on September 20, 1962, notifying relator in writing of the reasons for the suspension in the following language:

"I believe your lack of judgment in the capacity as a supervising officer necessitates this action. This suspension will be effective from date until the matter of investigation of irregularities concerning possible violation of Idaho Fish and Game Regulations are resolved."

The Idaho game warden, upon completion of his investigation, filed a criminal complaint against relator and his hunting companion on September 27, 1962, in the probate court of Fremont County, Idaho, charging them with possession of two

Bighorn sheep taken unlawfully in Idaho in violation of the Idaho fish and game laws (I.C. 36-805). On advice of counsel, relator declined to appear and answer these charges. This was communicated to the Director and various conversations were had concerning this insofar as it affected relator's status with the Department between the Director, relator and relator's attorney over a considerable period of time with a basic factual dispute evident concerning what understanding was reached. It is undisputed that relator and his counsel advised the Director that they preferred to have the charges heard in Federal Court rather than in the probate court of Fremont County, Idaho, and felt that this eventuality might well materialize. The basic disagreement concerns whether relator was led to believe that a favorable outcome in Federal Court would suffice to end the matter as far as the Department was concerned. All investigation of the incident by the Director was completed upon receipt of the Idaho Fish and Game Department investigation in early November.

After relator's suspension by the Director on September 20, relator took his accumulated annual leave of approximately 30 days, was not employed for about two weeks thereafter, and was then employed by the Director as a laborer of the Department's Fort Peck game farm until about January 1, 1963. Thereafter relator was employed on various temporary jobs for the Department until his discharge on April 30, 1963.

In the meantime the hunting incident was brought to the attention of the United States Attorney for Idaho who apparently presented it to a federal grand jury as a violation of the Federal Lacey Act (18 U.S.C. § 43) charging relator and his companion with interstate transportation from Idaho into Montana of the dead bodies of two Bighorn mountain sheep in violation of Idaho state law. (I.C. 36-805 and 36-1403) The federal grand jury refused to indict either relator or his companion on this charge, which refusal was communicated to the

Director in April, 1963, on an undetermined date prior to April 16.

The refusal of the federal grand jury to indict relator was communicated by the Director to the Montana Fish and Game Commission (hereafter called the Commission) at their regular monthly commission meeting held on April 16, 1963, with the minutes of that meeting reflecting the following proceedings:

"ITEM 50. JAMES FORD—Mr. Everin (Director) advised that he felt Jim Ford's (relator's) status with the Department should be re-evaluated at this time. The Federal government is not bringing charges after a Federal grand jury heard the evidence as submitted. There is a case pending in the Idaho courts. Mr. Everin (Director) feels Mr. Ford (relator) should not be given a warden assignment but there is field work in the statewide maintenance program that he could do. Mr. Everin (Director) asked for guidance from the Commission as to what should be done.

"After discussion the following motions resulted: MOTION, Mr. Leipheimer (Commissioner) : 'I move that the Director be requested to obtain Jim Ford's (relator's) resignation or fire him'." (Parenthetical inserts supplied.)

This motion was thereupon seconded and passed by the Commission.

Relator had no notice that his discharge would be considered at this meeting, no charges had been filed against him at this time, he was not present at the meeting and no hearing had been held.

Thereafter the Director gave relator an opportunity to resign which relator declined, requesting notice, hearing and an opportunity to answer any charges that might be filed. Relator was notified of his discharge by the Director on April 30 and a copy of the charges furnished him.

Eventually the charges came on for hearing before the Commission with relator present in person and with counsel. Evidence was received by the Commission from all parties and on

October 7, 1963, the Commission made findings to the effect that relator was "guilty" of most of the charges and rendered its decision in the following language:

"Based upon the foregoing findings, the Commission makes the following ORDER:

"1. That the decision of the Director of the Montana Fish and Game Department in suspending James A. Ford without pay and without duties and filing charges against him for the purpose of seeking his dismissal is hereby confirmed and approved.

"2. That the employee James A. Ford is hereby dismissed and discharged from the service of the Montana Fish and Game Department, such dismissal and discharge to date from the 30th day of April, 1963, the date upon which such suspension was effective and such charges were filed."

Thereafter on March 23, 1964, relator applied to the district court of Lewis and Clark County for a writ of mandate to compel the Commission to reinstate him as warden supervisor for the Department, to declare the acts of the Commission in dismissing and discharging him and in purporting to confirm such discharge to be null and void, and for an award of costs and expenses, including reasonable attorney's fees, for instituting and prosecuting the action. An alternative writ of mandate was issued and the matter came on for hearing in the district court upon the record of the Commission hearing together with a number of supplementary affidavits received by the court apparently by agreement of counsel. On December 23, 1964, the district court entered its findings of fact, conclusions of law, and judgment dismissing relator's petition and quashing the alternative writ of mandate. This appeal followed.

Although relator has made no specification or enumeration of issues presented for review, it is apparent that his basic contentions are these: (1) That relator was discharged by the Commission by its arbitrary action of April 16, 1963, without prior notice, hearing, charges on facts before it in violation of

law and the previously established policy of the Commission. (2) That all actions taken by the Director and the Commission after April 16, 1963, constituted nothing more than an attempt to legalize an illegal firing by paying lip service to the discharge requirements of law. (3) That the Commission hearing itself was illegal and void on various grounds.

It does not appear necessary to consider the various contentions raised by relator separately since the principles of law controlling in this case furnish the answer and determination of this appeal. The ultimate question to be determined in this appeal can be stated in this manner: Was relator discharged for cause in the manner provided by law?

At the outset, it is appropriate to determine and compare the extent and limitations of the respective powers of the Commission on the one hand and the Director on the other to remove or discharge an employee.

The Commission's power to discharge an employee is contained in section 26-104, subd. 4, R.C.M.1947, which provides:

"It [The State Fish and Game Commission] shall have power to discharge any appointee or employee of such commission for cause at any time."

The extent and limitations of this type of removal power have been defined by this Court previously. It has been held that where power of removal is granted "for cause" without limitation, qualification or definition, the words "for cause" mean reasons which the law and sound public policy recognize as sufficient warrant for removal. (State ex rel. Nagle v. Sullivan, 98 Mont. 425, 40 P.2d 995, 99 A.L.R. 321; State ex rel. Holt v. District Court, 103 Mont. 438, 63 P.2d 1026.) And where the power of removal can only be exercised for cause and no statutory removal procedure is prescribed, such removal power can only be exercised *after* notice to the employee and *after* affording him an opportunity to be heard. (67 C.J.S. Officers § 61, p. 255; State ex rel. Howard v. Ireland, 114 Mont.

488, 138 P.2d 569; State ex rel. Opheim v. State Fish and Game Commission, 133 Mont. 362, 323 P.2d 1116.) As applied to the discharge of an employee by the State Fish and Game Commission, the notice and hearing requirements are set forth in the Opheim case, supra, in the following language of Mr. Chief Justice Harrison:

"Summarizing them, it is our view that the relator was entitled to have notice of the specific charges relied upon, and a hearing thereon at a time and place fixed therefor, of which he should have reasonable notice so that he may prepare to meet the charges; *also, all of this should be done before and not after a summary dismissal.*" (Emphasis supplied.)

From the foregoing it is readily apparent that the Commission has no power to discharge an employee summarily without prior notice and an opportunity to be heard.

On the other hand, the Director's power to discharge employees is found in the grant contained in section 26-108, R.C.M.1947, which provides as follows:

"The director shall have the power to suspend without pay, reduce in rank, or remove any employee at any time for cause, providing that any person who has been continuously employed for one (1) year or more immediately preceding any suspension or discharge may demand and receive a hearing on charges filed before the fish and game commission."

This grant of removal power has previously been interpreted by this Court to vest the power of summary removal in the Director without prior charges, notice or hearing subject to review and final action by the Commission if the employee demands a hearing. (State ex rel. Hollibaugh v. State Fish and Game Commission, 139 Mont. 384, 365 P.2d 942.)

It is thus apparent that one of the chief differences in the removal powers of the Director as compared to the Commission is that the former has summary removal powers that may be exercised without prior charges, notice and hearing while the latter may exercise its removal powers only after

charges have been filed and notice and opportunity to be heard has been given. This difference is grounded on consideration of sound public policy. Such public policy has been declared and established by the Legislature in respect to the Director's removal powers by the enactment of a statutory removal procedure. (Section 26-108, R.C.M.1947; State ex rel. Hollibaugh v. State Fish and Game Commission, supra.) Such public policy has not been declared or established in respect to the commission's removal powers by the Legislature through enactment of a statutory removal procedure or otherwise so it must be determined and declared by this Court.

The consideration of sound public policy behind the grant of summary dismissal power to the Director without prior charges, notice and hearing are well expressed in the Hollibaugh case by Mr. Justice Castles on pages 391 and 392 of 139 Montana Reports, page 946 of 365 P.2d:

"This statute clearly does not provide for a hearing before the Director. The legislative plan is to vest in the Director the power to remove summarily if a hearing is not demanded. The Director must necessarily allow the employee an opportunity to demand a hearing. The power to conduct a hearing and make the discharge final is vested in the Commission. *The obvious purpose of this arrangement is to allow discharge by an officer who has close contact with the employee and yet allow review by the board which bears the final responsibility for the department.* In view of the far-flung activities of the Fish and Game Commission such arrangement seems desirable and is eminently fair and reasonable." (Emphasis added.)

The considerations of a sound public policy withholding summary removal powers from the Commission until after charges are filed, notice of hearing is given and an opportunity to be heard on those charges is afforded the employee are likewise clear. The Commission with its broad powers over the wide and diverse activities of the Department does not have that personal contact and knowledge of the individual depart-

ment employees and their activities that must necessarily be possessed by the Director. The main thrust of the Commission's duties and functions is in the area of broad decision and policy making as distinguished from day-to-day administration of the activities of the Department and its personnel. Hence their knowledge of individual employees and their activities is generally extremely limited and often nonexistent. Under such circumstances sound public policy requires that if the Commission itself, rather than the Director, discharges an employee that it do so only after it has notified the employee of the specific charges relied upon as constituting cause for dismissal, has given the employee reasonable notice of the time and place of hearing thereon and has afforded the employee a reasonable opportunity to be heard in defense against those charges. All this is required to prevent precipitate action by the Commission based upon incomplete knowledge and thus afford fundamental justice to the employee.

From the foregoing discussion it is to be observed that there are two phases to the dismissal process as applied to permanent employees of the Department who contest their dismissal: (1) The initial decision to discharge the employee and (2) final action by the Commission. Where the initial decision to discharge is made by the Commission itself, the charges relied upon by the Commission as constituting cause for dismissal and upon which the Commission acted in instituting removal proceedings must be disclosed, specified and filed by the Commission; reasonable notice and hearing on these charges must be given the employee; and a fair hearing had before the Commission on these charges. All this must be done before and not after summary discharge by the Commission. Stated another way, the "for cause" requirements on dismissal apply as equally to the initial decision of the Commission to institute discharge proceedings as to the final action taken by the Commission after hearing. To hold other-

wise would permit arbitrary action by the Commission in initiating discharge proceedings in the first instance.

With these principles in mind we must first determine whether relator was discharged in the first instance by the Commission or by the Director. The Commission argues that it did not discharge relator in the first instance by its actions of April 16; that the Director asked the Commission for guidance and the Commission, after discussion, was of the opinion that relator's status with the Department should be brought to a head and advised the Director of its opinion that relator's resignation should be secured or he should be discharged; that thereafter the Director himself fired relator in the manner provided by statute, which firing was approved and confirmed by the Commission after hearing.

With this argument we do not agree. It is abundantly clear in the record before us that the initial decision to discharge relator was made by the Commission and not by the Director. The Director originally suspended relator on September 20, 1962, without pay and without official duties as a result of relator's involvement in the hunting incident. At about the time the Director completed his investigation of the hunting incident, the Director again employed relator in the Department albeit in temporary employment unrelated to that in which he was engaged prior to his suspension. This temporary employment with the Department continued until after the Commission meeting of April 16, 1963. At the Commission meeting of April 16, the Director made it reasonably clear to the Commission that he didn't want to make any decision on relator's employment status with the Department, expressed an opinion inconsistent with the discharge of relator, and asked the Commission for guidance. By this action the Director "passed the buck" from himself to the Commission, i. e. transferred the decision on relator's employment status from his own shoulders onto the collective shoulders of the Commission. After discussion the Commission "requested" the Director either to get relator's resigna-

tion or fire him. By this act the Commission itself summarily decided that relator should be discharged. At this point the die had been cast—the initial decision to discharge relator had been made—and it was clearly the decision of the Commission and not the Director. It is not enough to say that the action of the Commission was a "request" and not an "order"—that it was directory and not mandatory; that dialogue between the Director and the Commission is contemplated and not prohibited; or that the Director could still do as he pleased in regard to future action concerning relator's employment by the Department. We are not here concerned with semantics but with substance. Realistically the Commission by its action of April 16 initiated the summary discharge of relator 14 days later without a hearing.

Having thus determined that the Commission itself made the initial decision to discharge relator, we must now determine whether the law governing discharges by the Commission or that relating to discharges by the Director is applicable. There can be only one answer. Where the Commission rather than the Director makes the initial decision to discharge an employee, the law governing Commission discharges and not the law governing Director discharges is applicable and summary dismissal of the employee without prior charges by the Commission, reasonable notice and hearing thereon, and without affording the employee an opportunity to refute the charges is prohibited. Summary power of dismissal without prior charges, notice and hearing has been granted to the Director but withheld from the Commission as heretofore discussed. To permit the Commission to make the initial decision to discharge the employee and then request the Director to fire him which the Director proceeds to do is to permit the Commission to accomplish indirectly that which it cannot do directly. It would substitute subterfuge for statutory compliance and render meaningless the limitations imposed by law upon the Commission's power to discharge employees.

The subsequent action of the Director in summar-

ily discharging relator without a hearing, the later filing of charges by the Director and the hearing before the Commission resulting in confirmation of the Director's summary discharge of relator did not legalize nor validate such prior discharge. All these proceedings were the direct product of the Commission's initial decision to discharge relator without prior charges, notice or hearings. They cannot cure the illegal action of the Commission in the first instance because all conditions precedent to discharge must be fulfilled in order to give the discharging authority jurisdiction and power to act (State ex rel. Nagle v. Sullivan, supra; State ex rel. Howard v. Ireland, supra) and subsequent action by the dismissing authority cannot cure a discharge made without prior hearing where such is required (State ex rel. Opheim v. State Fish and Game Commission, supra; State ex rel. Howard v. Ireland, supra; State ex rel. Nagle v. Sullivan, supra). The case at bar is a classic example of the vice inherent in permitting the Commission itself to initiate summary discharge proceedings through the agency of the Director. Here the Director didn't want to make any decision to discharge relator; the Commission then decided that relator should be summarily discharged but didn't have the power itself to accomplish this; thereafter the Director lent himself and his powers to validation of the Commission's illegal decision thereby becoming a mere instrumentality of the Commission's will and finally accomplishing a result which would not have been accomplished by the Director acting on his own volition and which could not have been accomplished by the Commission within the scope of its own powers. Clearly relator was not accorded fair treatment here but on the contrary was the victim of arbitrary and illegal action by the Commission acting in concert with the Director.

By way of summary then, we hold that under the facts of this case there was a summary discharge of relator by the Commission without prior charges, notice or hearing; that such summary discharge of relator is beyond the power and

authority of the Commission and is therefore illegal; and that such summary discharge cannot be validated by subsequent action of the Director and the Commission under the provisions of section 26-108, R.C.M. 1947. We express no opinion as to whether cause exists or does not exist for relator's removal and discharge. Our decision herein is strictly limited to the illegal manner in which relator's discharge was accomplished. Nor is this decision to be interpreted or construed as any limitation whatever on any future action that may be taken by either the Director or the Commission in the premises concerning relator and his employment status with the Department so long as such future action is taken in the manner provided by law.

Accordingly, it is ordered and adjudged: (1) That all acts of respondent Commission in dismissing and discharging relator from his employment with the Department and in purporting to confirm the same were and are a nullity, void and of no force and effect; (2) That a peremptory writ of mandate issue from this Court commanding the State Fish and Game Commission of the State of Montana to reinstate James A. Ford to the same employment status and the same or similar employment with the Montana Fish and Game Department that said James A. Ford had and possessed on April 16, 1963, immediately prior to the Commission meeting of that date; (3) That the judment of the district court is reversed; (4) That reference is hereby made to the district court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark, for the determination and award of reasonable attorney's fees for the services of relator's attorneys herein.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN. C. HARRISON, DOYLE and ADAIR, concur.