No. 13129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

M. J. STEER,

Plaintiff and Appellant,

-vs-

CITY OF MISSOULA, MONTANA,
a municipal Corporation, THE
POLICE COMMISSION OF THE CITY OF
MISSOULA and the members thereof
in their official capacity as
Police Commissioners et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

C. W. Leaphart argued, Helena, Montana

For Respondents:

Root and Valgenti, Missoula, Montana
Victor F. Valgenti argued, Missoula, Montana

---

Submitted: March 3, 1976

Decided: MAR 26 1976

Filed: MAR 26 1976

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This appeal is from a judgment of the district court, Missoula County, affirming the decision of the Missoula Police Commission whereby plaintiff was dismissed from his employment as a police officer.

On September 27, 1971, the City of Missoula hired appellant, M. J. Steer, as a probationary patrolman. Upon successful completion of the probationary period, appellant was confirmed as a patrolman on March 28, 1972. On April 16, 1973, the then Chief of Police Gilbert Hansen, believing appellant guilty of misconduct, gave him the choice of being fired outright or submitting his resignation. Appellant submitted his resignation.

Thereafter appellant filed in district court an application for a writ of mandate alleging his dismissal was contrary to the Metropolitan Police Law, Chap. 18, Title 11, R.C.M. 1947, in that he was denied the right to answer preferred charges in a hearing before the police commission prior to his dismissal. Following a continuance, the district court on April 8, 1974, issued a writ of mandate ordering appellant's reinstatement.

Whereupon the new Chief of Police Ray Roehl by letter to appellant acknowledged his reinstatement, but announced his immediate suspension pending results of a hearing before the police commission on charges of misconduct, dishonesty, and failure to obey a lawful order of a superior officer. The statement of charges came on for hearing on May 2, 1974, and after presentation of evidence the hearing was continued without date. On July 15, 1974, Chief Roehl sent another letter to appellant containing a statement of two additional charges concerning false information in his employment application and stating that since appellant was on vacation status no suspension was deemed necessary. The police commission reconvened on August 13, 1974, and

after the presentation of further evidence, found appellant guilty of failure to obey a lawful order of a superior officer, one charge of conduct unbecoming an officer and falsification of his application for employment. Pursuant to sections 11-1805 and 11-1806(5), R.C.M. 1947, the police commission, with the approval of Mayor Robert E. Brown, ordered appellant's dismissal from the Missoula Police Department effective August 13, 1974. Until the time of his final dismissal, appellant received full salary and benefits.

In October 1974, appellant filed the complaint involved in this proceeding seeking review of the police commission order, pursuant to section 11-1806(7), (8), R.C.M. 1947. On May 29, 1975, the district court affirmed the decision of the Missoula Police Commission. Steer appeals from that order and judgment.

The one issue presented on appeal is whether or not in discharging appellant, the chief of police and the police commission of the City of Missoula denied appellant procedural due process of law.

Appellant's main argument in this regard centers around the contention that once he was summarily fired the first time, "the die had been cast" because the decision to fire had already been made final. Therefore, in appellant's view, all administrative actions subsequent to his reinstatement were mere ex post facto attempts to provide due process so as to justify his discharge and as such they were procedurally defective.

Upon review of the facts and case law cited by appellant, we cannot agree with this contention. Appellant relies on several cases for his position that a procedurally improper firing cannot be cured by any kind of subsequent action of the dismissing authority. Opheim v. Fish & Game Comm., 133 Mont. 362, 323 P.2d 1116; State ex rel. Ford v. Fish & Game Comm'n, 148 Mont. 151,

418 P.2d 300; State ex rel. Lease v. Wilkinson, 59 Mont. 327, 196 P. 878; State ex rel. Nagle v. Sullivan, 98 Mont. 425, 40 P.2d 995. However we find the cases so cited are distinguishable from the case at bar. In those cases, none of the illegally dismissed employees actually received reinstatement and restitution of benefits prior to institution of formal charges through proper channels. In the instant case, following the procedurally improper dismissal, appellant secured reinstatement and apparently enjoyed vacation with pay status pending the outcome of a hearing on formal charges. Such reinstatement and restitution of benefits is the controlling factor in disposing of appellant's ex post facto argument because where such administrative action has occurred the effects of any prior illegal procedure stand corrected and can have no influence on future procedural actions. Thus, the initial illegal discharge becomes irrelevant to the issue at hand.

Turning to the proceedings instituted against appellant after reinstatement, this Court has recognized that a decision favorable to a discharged public employee because of procedural deficiencies in his dismissal will not insulate that employee, after reinstatement, from further public employer action if appropriate statutory procedures are employed. This Court in State ex rel. Ford v. Fish & Game Comm'n, 148 Mont. 151, 165, 418 P.2d 300, said:

> " * * * We express no opinion as to whether
> cause exists or does not exist for relator's
> removal and discharge. Our decision herein is
> strictly limited to the illegal manner in which
> relator's discharge was accomplished. Nor is
> this decision to be interpreted or construed
> as any limitation whatever on any future action
> that may be taken either by the Director or the
> Commission in the premises concerning relator
> and his employment status with the Department so
> long as such future action is taken in the manner
> provided by law."

Our final inquiry thus focuses on the question of whether appropriate statutory procedures were followed in the final dismissal

- 4 -

of appellant. Appellant makes several allegations of due process violations during the proceedings which culminated in his final discharge. These allegations will be discussed in turn.

Appellant alleges the suspension immediately following reinstatement was contra to the Metropolitan Police Law in that the chief of police did not secure the approval of the mayor. Section 11-1806(10), R.C.M. 1947, states:

> "The mayor or chief of police, subject to the approval of the mayor, shall have the power in all cases, to suspend a policeman, or any officer, for a period of not exceeding ten (10) days in any one (1) month, such suspension to be with or without pay as the order of suspension may determine."

Nowhere in its brief or oral argument did the respondent specifically answer this allegation. However, after examining the district court file, it appears appellant was not on suspension, but rather paid vacation status. True the letter of April 9, 1974 from the chief of police to appellant concerning reinstatement mentioned the word "suspension" and the authority to so suspend under section 11-1806. But a later letter from the chief of police to appellant in reference to new charges, dated July 15, 1974, stated appellant was " * * * currently on vacation status * * * " and would not be suspended at that time. Thus it would seem that any violation of statutory directives was rendered harmless by subsequent placement on vacation status with full pay until the time of final discharge.

Appellant next contends the police commission should have been equitably estopped from preferring charges in reference to false statements on appellant's employment application three years after such application was submitted and two years three months after he had completed his probationary period. We find no merit in this contention. Section 11-1805, R.C.M. 1947, in pertinent part, states:

> "Any applicant who shall make any false statement

to the police commission as to his age or other qualifications required, at his examination before the police commission, shall be subject to suspension or dismissal from the police force, after trial."

No mention is made in this section of any statute of limitations as to actions stemming from false information in the employment application.

Finally, appellant contends that in the interest of fairness, rules of criminal procedure should guide the filing of charges and under such rules the police commission should be precluded from filing additional charges concerning the employment application, once proceedings against appellant had been initiated. Helpful to our consideration is Bailey v. Examining and Trial Board, 45 Mont. 197, 199, 122 P. 572. Though Bailey stands merely for the rule that the sufficiency of charges as to details, designation of offenses, etc. in police commission proceedings are not to be tested by the rigid rules of criminal procedure, we believe the rationale offered in that decision is of persuasive value in the instant case. In Bailey this Court said:

> " * * * The only requirement of the statute is that the charge shall be reduced to writing * * * and if in substance it makes out any one of the triable offenses mentioned, it is sufficient. And even in determining this question the courts will apply the most liberal rules of construction, and necessarily so. The members of the Police Trial Board are not required to be learned in the law of pleading and practice; in fact many board members are laymen entirely unfamiliar with court procedure. Neither is it demanded nor contemplated that the person preferring charges against a policeman shall specify the details of the charge, give a particular designation to the offense, or employ an attorney to draft the complaint. To insist upon strictness in construing a written charge of this character would defeat the purpose of the law and render members of the police force immune from discipline. * * *."

Recognizing the limited, noncriminal nature of such police commission hearings and the understandable lack of legal expertise on the part of the members of the police commission, this Court

does not impose rules of criminal procedure to a hearing of this type.

The judgment of the district court is affirmed.

_Wesley Castles_
Justice

We concur:

_John Conway Harrison_

_Gene B. Daly_

_Frank I. Haswell_
Justices

_W. W. Lessley_
Hon. W. W. Lessley, District Judge
sitting in place of Mr. Chief Justice
James T. Harrison.

- 7 -